## W. T. WAGGONER v. M. DODSON ET AL.

### No. 1202. Decided April 16, 1903.

**1.—Innocent Purchaser—Deed—Recitals—Registration.**

One who holds under a conveyance which recites that the grantor had previously conveyed the same land by a deed which he was informed had been lost, is not protected as an innocent purchaser against those holding under an older but unrecorded deed from the same grantor. (Pp. 420-422.)

**2.—Same—Presumption.**

It would not be presumed that the recital by grantor of his execution of a previous conveyance of the same land referred to a deed to the same grantee or one under whom he held; rather, that the grantor did not intend to commit himself to that declaration. (P. 420.)

**3.—Deed—Recitals—Notice.**

Purchasers of land are charged with notice of everything appearing on the face of their muniments of title, and can not be regarded as innocent purchasers where they hold under a deed which shows on its face that the grantor had no title. (Pp. 421, 422.)

**4.—Same—Declarations.**

The purchaser could not rely on the interested declarations of a grantee, whose deed recited a previous conveyance of the land by the grantor, that he was the grantee in such previous conveyance, without inquiring of the grantor. (P. 422.)

**5.—Estoppel.**

Evidence of declarations by a party that he made no claim to the land in controversy considered, and held not to amount to an estoppel, where he was under no duty to disclose his claim, and his attention not directed to the question of his own title, and the opposite party not misled thereby. (Pp. 422, 424.)

Error to Court of Civil Appeals for the Second District, in appeal from Wichita County.

Waggoner sued Dodson and others in trespass to try title. Defendants had judgment which was affirmed on appeal by plaintiff, who then obtained writ of error.

*W. W. Flood* and *Theodore Mack,* for plaintiff in error.—Where it appears from a recitation in a conveyance that the vendor had executed and delivered his deed to the land sought to be conveyed, which deed the vendor is informed has been lost, and therefore in consideration of the premises and the sum of one dollar "bargains, sells, and quitclaims" the land, the deed must be construed when considered in the light of all the facts and circumstances as a mere quitclaim deed. Especially

is this true where it appears that the person deraigning title through such deed had not paid any consideration to the maker of the deed, but had only paid a fee to his agents for procuring the deed. One claiming under such a deed must be held to have notice of the prior conveyance, and the recitation thereof is sufficient to put him on inquiry; it is no excuse to say that it was inconvenient to use reasonable diligence to ascertain to whom the prior deed had been made.

Conceding that the deed on its face is, technically speaking, not a quitclaim deed, nevertheless the law imputes to a purchaser knowledge of every fact appearing in the chain of title, and the recitation of the fact that a deed had theretofore been executed by Hornsby, without stating to whom or under what circumstances, is sufficient to put the purchaser on inquiry, which if prosecuted would have acquainted him with the facts concerning the execution of the former deed.

Where it appears that there was possession of land either in person or by tenant, such possession is equivalent to registration of a prior deed, and one purchasing under such circumstances is not entitled to protection as an innocent purchaser, even though the prior deed was not recorded.

Where it is material to determine whether the purchaser bought the land or merely the chance of title, not only the terms of the conveyance, but the adequacy of the price paid for the land and other circumstances attending the transaction may be looked to.

Authorities under foregoing propositions: Mitchell v. Puckett, 23 Texas, 573; Key v. La Pice, 88 Texas, 212; Watkins v. Edwards, 23 Texas, 448; Turner v. Cochran, 94 Texas, 484; Rogers v. Pettus, 80 Texas, 425; Harrison v. Boring, 44 Texas, 256; Taylor v. Harrison, 47 Texas, 461; Lumpkin v. Adams, 74 Texas, 103; Lea v. Polk County Copper Co., 21 How., 493; Bush v. Ware, 15 Peters, 93; Caruth v. Grigsby, 57 Texas, 259; Moore v. Scott, 38 S. W. Rep., 394; Tied. on Real Prop., sec. 819; 1 Devlin on Deeds, sec. 674; Galland v. Jackman, 26 Cal., 87; Wade on Notice, secs. 33, 270; Johnson v. Williams, 37 Kan., 179; Sherwood v. Moelle, 1 Law. Rep. Ann., 798; Hamilton v. Doolittle, 37 Ill., 473; Warvelle on Vendors, 608, 609; Mainwarring v. Templeman, 51 Texas, 205; Harrold v. Sumner, 78 Texas, 583.

The testimony shown in bill of exception number 3 was purely hearsay and inadmissible, since it was not a part of the transsaction, but was merely narrative of what occurred, and the declaration made by Shaw was made at a time when the declarant could derive advantage from his own statement, and at a time when there was some exciting cause to induce him to depart from the truth. Byers v. Wallace, 87 Texas, 518; Railway Co. v. Hicks, 2 Posey U. C., 437; 1 Greenl. on Ev., secs. 99, 110, 145; Phillips on Ev., 228, 202, 203; Best on Ev., sec. 247; Hall v. Hall, 34 Ind., 314; Upham v. Wheelock, 36 Vt., 27; Felt v. Amidon, 43 Wis., 467.

The consideration in the deed being contractual in its nature, parol evidence is not admissible to contradict or vary it. Kahn v. Kahn, 94

Texas, 114; Railway v. Garrett, 52 Texas, 133; 6 Am. and Eng. Enc. of Law, 2 ed., 775, note 1.

Where words or acts are relied upon to constitute an estoppel, it must be shown that these words or acts in some way influenced the party claiming the benefit of the estoppel. In order that an estoppel might avail, it must be shown that the party was not only destitute of the knowledge of the fact, but had no means of acquiring any knowledge, and was destitute of anything tending to constitute notice and put him upon inquiry. To bind a party by estoppel, representations must be knowingly made with the intention that they should be acted upon, and the party making them must have knowledge of the fact, before he can be bound by representations made by him, and these representations, when made, must be clear, precise and unequivocal. Actual occupancy of land, even though the occupant be silent as to his chain of title, is sufficient notice to all the world of the claim on the part of the occupant, and in the absence of any affirmative statement made by the occupant of the land, his failure to assert title and record his deed, under the circumstances in this case, could not operate as an estoppel against him. An estoppel against an estoppel sets the matter at large, and where the defendants claim title under a deed, the recitation of which thy are estoopped to deny, it is error for the court to submit an issue of estoppel against the plaintiff in favor of the defendants claiming under a deed, the recitations of which they are estopped to deny. Scoby v. Sweatt, 28 Texas, 713; Page v. Arnim, 29 Texas, 54; Mayer v. Ramsey, 46 Texas, 371; Wortham v. Thompson, 81 Texas, 348; Grinnan v. Dean, 62 Texas, 219; Brant v. Coal Co., 93 U. S., 326; Hoboken v. Penn. Railway Co., 124 U. S., 693; Bigelow on Estop., 5 ed., 570, 360; 11 Am. and Eng. Enc. of Law, 2 ed., 434, 435.

*J. T. Montgomery,* for defendants in error.—The deed referred to is not a quitclaim deed but a conveyance, and therefore parties holding under it are entitled to protection as innocent purchasers. Richardson v. Levi, 67 Texas, 359; Lumber Co. v. Hancock, 70 Texas, 312; Thorn v. Newsom, 64 Texas, 161; Finch v. Trent, 3 Texas Civ. App., 568; Colton v. Lombardi, 81 Texas, 355; Harrison v. Boring, 44 Texas, 255.

Even if the deed is a quitclaim deed only, that fact is not sufficient to deny to subsequent purchasers who have purchased under warranty deeds in good faith and for a fair price, the protection given by law to innocent purchasers as against an unrecorded deed. Warvelle on Vendors, 616; Hickman v. Green, 29 Law. Rep. Ann., and note page 47, where all the cases are collected; Merkel v. Borden, 39 N. E. Rep., 29.

The Court of Civil Appeals correctly held that the recital in the deed of the execution of a former conveyance as a consideration did not put the purchaser on inquiry as to the execution of a deed to some person other than Shaw, the natural meaning and effect thereof being that he had executed a former deed to Shaw which had been lost. In order for

a recital to charge a purchaser with notice, it must be such as explains itself or refer to some deed or circumstance which does explain it or leads to its explanation. 16 Am. and Eng. Enc. of Law, 1 ed., 800, and note; Bell v. Twilight, 45 Am. Dec., 369.

Possession of land is not constructive notice, like the registration of a deed. Possession is simply held to be such notice as puts a person upon inquiry and charges him with knowledge of such facts as proper inquiry would have developed. Notice by possession is an inference of fact and not a presumption of law, and therefore in all cases where the possession is equivocal or there is a conflict in the testimony, it is a question for the jury whether the character of possession was notice; that is, whether it was sufficient to put an ordinarily prudent person on inquiry and whether the facts would have been learned by such inquiry, and this issue having been submitted to the jury and their verdict approved by the Court of Civil Appeals, and there being evidence to sustain it, this court is bound by the finding. Where a person is in possession of land without title or claim of title, and secures a deed, but fails to have same recorded, his possession is not notice of the deed. Devlin on Deeds, sec. 771, 773, 769; Hamilton v. Ingram, 13 Texas Civ. App., 604; Eylar v. Eylar, 60 Texas, 319; Smith v. Miller, 63 Texas, 75; Fair v. Stevenot, 29 Cal., 486; Townsend v. Little, 109 U. S., 504; Ind. & I. C. Railway Co. v. Sprague, 103 U. S., 756; 16 Am. and Eng. Enc. of Law, 1 ed., 802, 803.

While the facts surrounding the transaction may be considered in connection with the deed to determine the intention of the parties in executing the deed, yet these facts and circumstances are not admissible as against subsequent vendees, and can not affect their rights, unless they are shown to have had some knowledge of them.

The verdict of the jury found all the necessary facts to constitute an estoppel, as against Waggoner, to set up or rely on his unrecorded deed as against A. S. James and his vendees, and said findings were supported by the evidence. Nichols-Steuart v. Crosby, 87 Texas, 443; Herman on Estop. and Res Adjud., secs. 770-775; Cady v. Owen, 34 Vt., 598; Westbrook v. Guderian, 3 Texas Civ. App., 406; Kiersky v. Nichols, 29 S. W. Rep., 71; Mitchell v. Reed, 70 Am. Dec., 647; McGee v. Stone, 9 Cal., 606; Horn v. Cole, 51 N. H., 287.

The verdict of the jury and the evidence both established all the necessary facts to estop Waggoner from asserting his title as against Kemp and his vendees.

The jury found that prior to the time Kemp purchased the land and prior to the time he assumed the purchase money notes given by Henderson, first, that Waggoner by his words, acts and conduct, and by his silence, caused Kemp to believe that he, Waggoner, did not own or claim any title to the land; second, that at time referred to, the circumstances were such that said Waggoner did or might reasonably have anticipated that Kemp would or might act on same as true; third, that by reason of same Kemp was induced to believe Waggoner did not own

or claim any interest in the land; fourth, that Kemp relied on same as a disclaimer of title; fifth, that if Waggoner had disclosed his title to Kemp, he (Kemp) would not have bought said land or assumed said notes given by Henderson; sixth, that Kemp had no knowledge of the claim of title of Waggoner; seventh, that he acted in good faith and paid a fair price for the land. See authorities under last proposition, also, Herman on Estop., sec. 764, 765; Guffey v. O'Reiley, 88 Mo., 418; Thompson v. Sanborn, 11 N. H., 201; Windell v. Van Renselaer, 6 Johns. Ch., 166; Brown v. Union D. St. Railway Co., 65 Minn., 508; Whipple v. Whipple, 109 Ill., 418; Gatling v. Rodman, 6 Ind., 289; 10 Century Digest, 2380.

*J. A. Hughes* also filed argument for defendant in error N. Henderson, and *J. H. Barwise, Jr.,* was on brief for appellees in Court of Civil Appeals.

WILLIAMS, ASSOCIATE JUSTICE.—This is an action of trespass to try title brought by plaintiff in error to recover of defendants in error a tract of 320 acres of land patented to the heirs of Reuben Hornsby. Both parties claim under M. M. Hornsby. The plaintiff's title was the elder, but was defeated in the District Court upon the ground (1) that defendants were innocent purchasers without notice of plaintiff's title, and (2) that plaintiff was estopped by his conduct from asserting his elder title against defendants. The Court of Civil Appeals affirmed the judgment of the District Court upon the first proposition, pretermitting a decision of the second. Plaintiff showed a regular chain of title from the State to M. M. Hornsby and in himself, under Hornsby, by deed from the latter to S. D. De Cordova, July 14, 1883, and deed from De Cordova to himself July 23, 1883. These two deeds were not recorded until November 27, 1899. The title of defendants originated in a deed from M. M. Hornsby to C. H. Shaw, May 13, 1892, as follows:

"The State of Texas, County of Travis. Know all men by these presents: That whereas, I, M. M. Hornsby, of the county of Travis and State of Texas, have heretofore made, executed and delivered my deed to the Reuben Hornsby survey of 320 acres of land lying and being situate in the county of Wichita, in the State of Texas, and which said deed I am now informed has been lost.

"Now, therefore, I, M. M. Hornsby, in consideration of the premises and of the sum of one dollar to me in hand paid by Charles H. Shaw, of the county of Travis and State of Texas, have bargained, sold and quitclaimed to the said Charles H. Shaw the said Reuben Hornsby survey of 320 acres of land situate in the said county of Wichita in the State of Texas.

"To have and to hold unto him the said Shaw, his heirs and assigns forever.

"Witness my hand this the 13th day of May, 1892.

　　　　　　　　　　　　　　　　　　　　　　"M. M. HORNSBY."

They further deraigned title to themselves through the following deeds: C. H. Shaw to W. B. Corwin, December 6, 1892, for an undivided half interest. C. H. Shaw to A. S. James, December 6, 1892. W. B. Corwin to A. S. James, December 6, 1892. A. S. James and wife to N. Henderson, December 21, 1892. N. Henderson to J. A. Kemp, dated December 21, 1892, but in fact executed later. Defendants, Dodsons, claim under conveyance from Kemp. There is a question of fact, not determined by the Court of Civil Appeals, as to whether James purchased from Shaw and Corwin, who were partners and paid nothing for the land, or purchased from Hornsby through Corwin and Shaw as his agents. He paid $550, but whether as consideration for the land, or to Shaw and Corwin as compensation for services and expenses in procuring the deed from Hornsby, is also a controverted question not settled by the Court of Civil Appeals. The view taken of the case renders further notice of these questions unnecessary. Henderson, Kemp, and the Dodsons bought under warranty deeds, paying adequate considerations, and under circumstances which may be conceded to be sufficient to sustain the finding that they were innocent purchasers, if that defense can be based upon a deed in their chain of title such as that from Hornsby to Shaw. That deed, as will be seen, recites that Hornsby had "heretofore made, executed and delivered his deed" to the land, not stating to whom, and that in consideration of the premises and of one dollar, he bargained, sold and quitclaimed to Shaw. What is the effect of such a deed? The recital is evidence against all parties to the instrument as well as those claiming under it. It states a fact which shows that Hornsby had previously parted with his title and then had none to convey. If such previous conveyance was to another person than Shaw, such other person had the title and Shaw got none. If the first conveyance was to Shaw, it and not the last invested him with the title. The title of Shaw and all persons claiming through him therefore depended upon the answer to the question, to whom was the first deed executed? This the deed does not answer, unless the presumption is to be indulged that the recited conveyance was made to the grantee named in the second. We know of no principle which authorizes such a presumption. The parties agreed to their own instrument and the recitals in it. It contains no express intimation that Shaw was the grantee in the original instrument, or had succeeded to his rights. The only proper conclusion from the omission is, that the maker of the instrument did not intend to commit himself to a determination and declaration that Shaw had acquired title under the previous conveyance. In such an instrument a recital that it was made to supply the loss of a former one under which Shaw had title would naturally be expected if such were the fact. Many instruments containing such recitals may be found, but a somewhat extended research has not brought to our attention such a one as that in question, and we can not hold that it has the same effect as if it contained recitals which we must assume were intentionally omitted. If the recital had been of an instrument creating a prior mortgage,

lease, or other estate less than the fee, it would hardly be contended that the presumption would arise that Shaw was the grantee therein. Farrow v. Rees, 4 Beav., 18. Such a recital would show an estate still in the grantee subject to his power to convey, and hence there would be less apparent inconsistency between the recital and the attempt to convey than there is in this conveyance. But the recital in question does not undertake to determine the rights existing under the prior conveyance, the grantor leaving that question open to be determined by other evidence, and hence there is no real inconsistency. If the parties claiming under this deed were plaintiffs in trespass to try title, would they, under it alone, after showing title in Hornsby, establish title sufficient to enable them to recover? We think not, for the reason that their own evidence would disclose an elder title outstanding under Hornsby with which they would not appear to be connected. We have found no authority exactly in point, but there are some which involve the same doctrine. In Maxwell Land Grant Company v. Dawson, 151 U. S., 586, plaintiff in ejectment relied on a deed which conveyed a large tract excepting "parts thereof, which the grantors have heretofore sold and conveyed." The tract sued for was a part of the larger tract, but plaintiff did not show that it had not been previously sold, and it was held that it could not recover as it had failed to show title to the land sued for. The same ruling was made in a number of other decisions. Corinne Co. v. Johnson, 156 U. S., 576; Rensens v. Lawson, 91 Vt., 254; Cox v. McClure, 71 Conn., 733; Harman v. Stearns, 95 Va., 71; Stockton v. Morris, 39 W. Va., 442. In these cases the deeds passed titles only to land not previously conveyed, and hence the plaintiffs, in order to show that the conveyances passed the lands sued for, were required to prove that they had not been previously sold. In the present case it may be said that the deed purports to convey the whole of the tract and that herein is the distinction. But the grantor was careful to recite that he had previously conveyed, thereby showing that he then had no title, and the result is, that a party claiming under the deed does not establish title until, in some way, he obviates the difficulty thus presented. The recital prevents the deed from operating against the prior conveyance. The case would doubtless be different if the deed had recited another to Shaw or to some one else whose title Shaw had obtained. The recital would not then leave the case open to the question as to who held the title already conveyed. If the party relying on such a deed proved the former conveyance, he would take under it; if he did not prove it, he would take under the last deed, there being nothing in its recitals to destroy its effect as evidence of complete title. Boyce v. Stambaugh, 34 Mich., 348.

It results from what we have said that, upon the face of their evidence, defendants have not an apparent title, even leaving out of view the deeds from Hornsby to De Cordova and from the latter to Waggoner. Such being the case, can they be regarded as bona fide purchasers? Authorities, here and elsewhere, too numerous to mention, hold that

they must know everything appearing upon the face of their muniments of title. The fact here appearing is, that they have no title through their deeds standing alone. Now, we understand it to be of the very essence of the claim of an innocent purchaser, protected by the registration laws, that he must have bought from one apparently invested with title, and have secured from him that which on its face is the title, without notice of a previous conveyance. The title of record appearing to be in his vendor such a purchaser is entitled to rely on the record, and when he buys that apparent title, without notice of any other, he is protected. But here the very deed which he takes notifies him that the title has already passed from the vendor, and leaves the right which he gets subject to the operation of the previous conveyance. If that conveyance was to another, he has notice of the rights of that other; if to himself, he must prove it, in order to make out his title. This, it seems to us, takes from his claim its very foundation. And every subsequent purchaser under such a deed takes it with the same notice and the same infirmity. Of course we do not hold that parties claiming under such a deed would be estopped from showing that there had been, in fact, no previous valid conveyance, or that it was made to them or to those whose rights they hold; nor do we hold that all this might not be proved by circumstances, or even presumed after long lapse of time and other attendant facts. No such questions are here presented, a prior deed to another having been produced. The only facts which defendants adduce to sustain their claim, in addition to the proof of purchase, payment of consideration and absence of actual knowledge of the prior unrecorded deed, are the conversations, hereafter stated, between James, Henderson and Waggoner, and a statement made by Shaw to James, at some time not stated, that he (Shaw) had procured a deed from M. M. Hornsby, and that it was destroyed by mistake in his office, and when he went to Hornsby to get a new deed, he declined, under advice of his attorneys, to make any other than that in evidence. The fact contained in this statement is not proved. The conversations with Waggoner were not had in the prosecution of any inquiry excited by the recitals in the deed and do not affect this question; and James could not safely rely on the interested statement of Shaw to destroy the effect of the recital as notice, whether Shaw be regarded as his agent or as his vendor, without any inquiry of Hornsby, who made the deed and who was accessible. Patman v. Harland, L. R. 17 Ch. Div., 353. What would have been the effect of an inquiry of Hornsby resulting in a confirmation of Shaw's statement we need not decide.

The evidence of estoppel was wholly insufficient. It was claimed to have arisen (1) from conversations between Waggoner and James, and (2) from conversations between Waggoner and Kemp. The evidence showed that Waggoner had the tract inclosed in a large pasture with many other tracts, some of which belonged to him and some to others, and that by such inclosure he asserted title only to those tracts which he owned. His title papers generally were in the custody of his attorneys,

but those to the land in controversy were in the possession of other persons. On account of the large number of these holdings (more than a hundred) Waggoner did not always have in mind what tracts he in fact owned; and, in the conversations with James and Kemp, was oblivious of the fact that he owned the land of which they were talking. While James was negotiating for the land, he proposed to sell it to Waggoner, who declined to buy, stating that he did not claim it and that the owner could fence it out of his pasture at any time, and he did not want to use it. There is an utter absence of evidence that James, in purchasing, acted upon or was influenced by what Waggoner said. Henderson, before he purchased, also tried several times to negotiate a sale of it to Waggoner, who, without affirmatively claiming or disclaiming title, simply replied that he did not want to buy it, saying that he had enough land in his pasture. We give, of course, the versions most favorable to the parties in whose favor the jury found.

The absence of evidence that James was influenced by Waggoner's statement deprives that transaction of a necessary element of an estoppel. Besides, the facts show that neither party was considering the matter with reference to any possible claim Waggoner might have had. James was already negotiating for the land and merely tried to arrange a sale to Waggoner in case he succeeded in purchasing. Nothing was said to indicate to Waggoner that the land referred to was any owned or claimed by him, and the evident assumption of both parties was that it was some of that in the pasture which he did not own. A just view of it would be that his mind was led away from any thought that the land might belong to him already. This is true of the conversation with Henderson. The subject of the conversation was not such as to require any statement from Waggoner as to his own claim, or to make it necessary for him to inquire into it. He simply declined the proposal to sell to him, making no misrepresentation whatever. It is true that parties are sometimes estopped by their silence and their failure to affirmatively disclose their rights. But this kind of estoppel is founded on an obligation resting upon the party to speak. There is nothing in the circumstances disclosed to create such an obligation. Neither Waggoner nor the others had in mind his title to this property, and nothing in their attitudes suggested to him that they would act upon either his silence or statements.

The case of Nichols-Steuart v. Crosby, 87 Texas, 443, relied on by defendants, was very different. There, one of the parties was considering a proposal to make a loan to the holder of one of the titles, and Smith, the holder of the other of which he was probably forgetful, was appealed to for advice. He did not simply remain silent, but undertook to advise the loan and to make the statement that he knew the other title to be good, saying nothing of his own. Undertaking to influence by his advice and statements, he was under obligations to know that his representations were true, at least so far as they affected his own title, and he could not set up his forgetfulness of his own claim in opposition

to his representation that the other was good. As was said in Knouff v. Thompson, 16 Pa. St., 364: "The law distinguishes between silence and encouragement. Whilst silence may be innocent and lawful, to encourage and mislead another into expenditures on a bad or doubtful title would be a positive fraud, that should bar and estop the party, the author of that encouragement and deception, from disturbing the title of the person whom he misled by any claim of title in himself."

We are of opinion that the evidence, taken at its strongest, was legally insufficient to establish either defense, and the judgments of the District Court and the Court of Civil Appeals are reversed and the cause remanded.

*Reversed and remanded.*