**ULOTH et al. v. MOODYMAN et al.*
(No. 301–3614.)**

(Commission of Appeals of Texas, Section B. March 29, 1922.)

Estoppel ⬧➡92(2)—Devisees held not estopped to claim under will.

Where a mother with consent of her children deeded lands to them excepting one who was a minor, saving certain lands for him, and later their father was discovered to be the real owner, and he, though repudiating the transaction, consented to deed the same property to the children taking notes from them, they to be reimbursed by his will for amounts paid on the notes, such grantees, in absence of renunciation of their rights in remaining land, were not estopped, after death of father, to claim, under the father's will devising the lands to all the children equally, their rights as heirs

in the portion of the property originally reserved for the minor child.

Error to Court of Civil Appeals of First Supreme Judicial District.

Action by John Uloth and another against A. Moodyman and others. From judgment that defendant Moodyman was the sole owner of certain land, plaintiffs and defendants John Uloth and wife appealed to the Court of Civil Appeals, which affirmed the judgment (227 S. W. 326), from which plaintiffs and defendant Moodyman bring error. Reversed and remanded, with instructions.

Van Velzer & York, of Houston, for plaintiffs in error.

Atkinson & Atkinson, of Houston, for defendants in error.

POWELL, J. [1] For a statement of the nature and result of this suit, we quote from the opinion of the Court of Civil Appeals, in part, as follows:

"This suit was instituted by John Uloth and wife, Lizzie Uloth, against Alonzo Moodyman, Warner Moodyman and John McNew and wife, Mattie McNew. They alleged that plaintiff Lizzie Uloth and defendants Alonzo Moodyman, Warner Moodyman, and Mattie McNew are each the owners of a one-fourth undivided interest in certain lots in blocks 1 and 2, including lots 2 and 5, block 1, of the Moodyman addition to the city of Houston, said interest being subject, however, to certain equities of Lizzie Uloth and Mattie McNew therein by reason of the terms of the will of Charles Moodyman, deceased. They pray for partition and adjustment of equities, etc.

"Alonzo Moodyman and Warner Moodyman answered first by general denial, but, further answering, they admit that all the property mentioned in plaintiffs' petition was owned by the parties as alleged, except lots 2 and 5 in block 1. They allege that said lots 2 and 5 are the exclusive property of Warner Moodyman, and pleaded estoppel as against the Uloths and McNews to claim any part of lots 2 and 5. Alonzo Moodyman disclaimed as to all of lots 2 and 5.

"Alonzo and Warner Moodyman prayed for such judgment as they should show themselves entitled to under the pleadings and evidence, both in law and in equity.

"So far as shown by the record, no answer was filed by either of the McNews, but it is recited in the judgment that they orally adopted the allegations of the plaintiffs.

"It was shown that in 1862 one Charles Moodyman was possessed of a certain 6-acre tract of land lying south of and fronting about 150 feet on Washington street in the city of Houston and *extending southward therefrom about 600 feet, being a parallelogram and about 150 feet in width and 600 feet in length; that Charles Moodyman married Mrs. Eliza Parker, a widow, on the 18th day of December, 1869; that at the time of said marriage Mrs. Eliza Parker had two children by a former husband, hereinafter referred to as Jones and

Roberts; that after the marriage of Charles Moodyman and Mrs. Parker there were born to them four children, to wit, plaintiff Lizzie, who married John Uloth, Mattie, who married John McNew, Alonzo Moodyman, and Warner Moodyman; that, after the marriage of Moodyman and Mrs. Parker, Moodyman built a home on said 6 acres of land, and he and his family resided therein as their home until 1881, at which time he left his wife and children and was not heard of by his family until in February, 1893, at which time they learned that he was living at Giddings, in Lee county, Tex.; that, after the departure of Charles Moodyman in 1881, Mrs. Eliza Moodyman and her children by Charles Moodyman believed the whole of the said 6 acres of land was the property of Mrs. Moodyman; that in 1892 there was about $135 to $140 taxes due on said 6 acre tract, and Mrs. Moodyman being desirous of partitioning said 6 acres among her six children, four by Moodyman, the parties to this suit, and Jones and Roberts, children of a former marriage, she instructed John Uloth, John McNew, and Alonzo Moodyman to have said 6 acres surveyed and platted into blocks and lots, and in accordance with said instructions said land was divided into blocks, lots, streets, and alleys, and a map made thereof in accordance with said survey. * * *

"This map or plat was made May 12, 1892, filed for record February 20, 1893, and duly recorded on March 20, 1893.

"On the 13th day of May, the day after said plat was made, Eliza Moodyman executed deeds by which she conveyed to Uloth and wife, McNew and wife, A. Moodyman, Jones, and Roberts, respectively, the lots and parts of lots as made by the plat upon which their several names appear. The consideration expressed in each of these deeds was $1 and love and affection, and it is conceded that in executing same it was the purpose of Eliza Moodyman to partition the greater part of the 6 acres of land, which all parties at that time thought belonged to Eliza Moodyman, among her children."

Early in 1893, a little less than one year after the deeds just mentioned had been executed by Eliza Moodyman, it was discovered that her husband, Charles Moodyman, was alive at Giddings, Lee county, Tex., and that the six acres of land in suit were his separate property. Mrs. Moodyman and her children all realized, after aforesaid discovery, that her effort to divide this property among her children was of no avail, and conveyed no title.

John Uloth, John McNew, and A. Moodyman went to Giddings to see Charles Moodyman and ascertain whether or not he would join in the deeds which had been made to them by Eliza Moodyman as aforesaid. He expressly repudiated his wife's attempted division of the property, but sold to each of his three visitors the land which his wife had tried to deed them as gifts. He said he needed money for his support; would give them nothing, but would sell parts of his property to them for an agreed consideration. The sales were accordingly effected.

238 S.W.—57

He executed the deeds, in which his wife later joined.

On April 1, 1893, about one month after he had sold portions of his land to the children aforesaid, he executed his will, as follows:

"The State of Texas, County of Lee.

"Know all men by these presents that I, Charles Moodyman, of the county of Lee and state of Texas, being in good health and of sound and disposing mind and memory, do make and publish this my last will and testament, hereby revoking all wills by me at any time made.

"First. I direct that all my just debts shall be paid and the legacies hereinafter given shall after the payment of the debts be paid out of my estate.

"Second. I give to each of my children in equal parts, to wit, Alonzo Moodyman, Lizzie Uloth, née Moodyman, Mattie McNew, née Moodyman, and Warner Moodyman all the property, real and personal, that I may possess at my death, after my debts are paid.

"With the express understanding that of the amounts of money now due me from my said children, all money paid to me by them on the purchase of certain lots in or near the city of Houston, Texas, they shall be reimbursed out of the estate I own at my death, after my just debts are paid, to the extent only of such payments; and if any of the purchase money of such lots as I may heretofore have sold to any of my said children be not paid, they shall have full credit therefor, only when the children who have paid me any part of their purchase be fully reimbursed to the extent of their payments.

"Third. I constitute and appoint Alonzo Moodyman and John Uloth my executors without bond of this my will.

"Fourth. I direct that no action be had in the courts except to prove and record this my will and return an inventory and appraisement of this my estate with a list of claims against said estate.

"In witness whereof I have hereunto set my hand this 1st day of April, A. D. 1893, in the presence of J. L. Rousseau and E. A. Burns, who attest the same at my request.
                                "Charles Moodyman."

Charles Moodyman died on May 11, 1896, and his will was duly probated in Lee county, Tex.

Warner Moodyman married the year his father died and moved away from his mother's home, but the latter has always continued to reside on said six acres of land, her homestead proper being situated on lots 2 and 5 in block 1, now in controversy in this suit. She was still alive and using the old homestead at the time of this trial in the district court. No one questions her right to continue to reside there as long as she lives and desires to do so.

We quote again from Court of Civil Appeals, as follows:

"In a trial before the court without a jury judgment was rendered in favor of Warner Moodyman for title to lots 2 and 5, block 1, and also adjudging that Uloths, McNews, and

A. Moodyman should be reimbursed for the moneys paid by them, respectively, to Charles Moodyman in the division of lot 1 block 1, which was found to be the property of the four children of Moodyman, each owning one-fourth undivided interest therein, subject to the equities asserted by appellants and A. Moodyman by reason of the payment by them of the several sums of money as hereinbefore stated."

The judgment of the district court gave effect to the will of Charles Moodyman, except that it adjudged Warner Moodyman to be the sole owner of said lots 2 and 5 in block 1. All parties concede that, under the will itself, Warner was entitled to only a one-fourth interest in said two lots.

There was no appeal from the judgment of the district court, except that John Uloth and wife and John McNew and wife appealed from that part of it only which vested title as aforesaid to lots 2 and 5 in Warner Moodyman.

The Court of Civil Appeals held that the Uloths and McNews were estopped to claim title to any part of said lots 2 and 5 under the will and affirmed the judgment of the district court. See 227 S. W. 326.

The Uloths and McNews were, upon proper application therefor, granted a writ of error by the Supreme Court, and the cause is now before us for examination and recommendation.

The Court of Civil Appeals confesses that it encountered difficulty in decreeing an affirmance of the trial court's judgment. They state that they based their decision upon the theory that any other judgment would be "shocking to good morals, the rules of equity, and to the simplest principles of justice." We are inclined to think that the Court of Civil Appeals, in striving to give effect to its views of the justice of the case, in a large measure lost sight of the state of the record and its total failure to satisfy the well-settled rules of estoppel so as to prevent Lizzie Uloth and Mattie McNew from asserting claim to this property under the will of their father.

Our answer to this contention of the Court of Civil Appeals is twofold. In the first place, we do not think justice would be outraged, as we shall hereafter attempt to show, by permitting these two daughters each to claim one-fourth of lots 2 and 5 under the will of their father. But, even if the apparent justice of the case must be overturned, we are still bound by the rule so forcibly announced by Justice Gaines for the Supreme Court of Texas in case of Bynum v. Preston, 69 Tex. 287, 6 S. W. 428, 5 Am. St. Rep. 49, as follows:

"The claim of appellants is unconscientious, and in any other than a legal sense, unjust; and the case of appellees, though brought about by their own laches, is a hard one. But the law is inexorable, and it is our duty to declare it, and not to bend it so as to meet the abstract justice of the case."

The will of Charles Moodyman is perfectly clear. It is free from ambiguity. Under that will, Lizzie Uloth and Mattie McNew each were entitled to one-fourth of said lots 2 and 5. All parties so concede. The Court of Civil Appeals does not question this proposition. Therefore, unless the Uloths and McNews are estopped by some acts of their own, or acts of others for which they are responsible, they are entitled to judgment permitting them to take under the will. Are they estopped? What are the facts in the record in this connection?

The requisite elements constituting an estoppel applicable to the case at bar have been ably set forth by our Supreme Court in case of Bynum v. Preston, 69 Tex. 291, 6 S. W. 429, 5 Am. St. Rep. 49, as follows:

"The conduct both of Bynum and Menifee is lacking in the essential elements of an estoppel. These are given in a leading text book upon this topic as follows: '(1) There must have been a false representation or concealment of material facts. (2) The representation must have been made with a knowledge of the facts. (3) The party to whom it was made must have been ignorant of the truth of the matter. (4) It must have been made with the intention that the other party should act upon it. And (5) The other party must have been induced to act upon it.' Bigelow on Estoppel, 484. See, also, Steed v. Petty, 65 Texas, 490; Blum v. Merchant, 58 Texas, 400."

The law of estoppel has been further ably discussed in later days by our Supreme Court in cases of Waggoner v. Dodson, 96 Tex. 415, 73 S. W. 517, and Burnett v. Atterberry, 105 Tex. 119, 145 S. W. 582. The latter case expressly approves the case of Bynum v. Preston, supra.

Under these well-settled principles of law laid down by our Supreme Court, before the Uloths and McNews can even approach a status where they could be held estopped from claiming under the will, it must, at least, be shown that they, by their words or acts, renounced in favor of Warner Moodyman their expectancies in lots 2 and 5 and thereby induced their father to later write his will as he did, or that they failed in some duty to Warner himself and prevented him from buying from his father as they had done.

There is absolutely no evidence that plaintiffs in error did or said anything to prevent Warner from buying from his father as they had. Warner himself expressly so testified. The Court of Civil Appeals does not make any finding to the effect that Warner was in any way lulled into a sense of security or deterred from looking after his own interests in the premises.

Therefore we come to consider whether or not the plaintiffs in error were in any wise

responsible for the action of Charles Moody-man in writing his will as he did. We have searched the record and fail to find any evidence of this fact.

A great deal has been said by the Court of Civil Appeals and counsel for defendants in error about the action of Eliza Moodyman in wanting to make certain disposition of this six-acre tract of land. There is no dispute about the wishes of the mother. That she would have given Warner Moodyman lots 2 and 5 there is no doubt. She wanted to divide the property, thinking it was hers, and that her husband was dead. She did not permit her children to divide this property to suit themselves. She did it as she pleased, and the children merely accepted as gifts the deeds she tendered them. There is no evidence that plaintiffs in error did anything more than this.

But all of the attempted division by Eliza Moodyman and the plat used in that connection faded away when Charles Moodyman was discovered. All interested parties realized that the deeds from the mother were worthless. All of that record should be swept aside in determining this case.

Charles Moodyman owned all of this property, subject to the homestead rights of his wife, from whom he had separated. He had the right to dispose of it as he pleased. He could sell it during his lifetime. He could devise it to one child only, or to all alike, just as his judgment might dictate. Therefore Warner Moodyman had no right of property in this six-acre tract during his father's lifetime. None of the children would have been deprived of any rights at law if none of the property had been devised to any of them.

The will is clear within itself, and its plain terms cannot be set aside or superseded by evidence of what Eliza Moodyman thought her husband intended to do. Nor can the terms of his written will be overridden because "possibly" inconsistent with certain alleged former oral statements of the testator himself. Consequently testimony of this kind is immaterial.

It is urged by counsel for defendants in error and the Court of Civil Appeals that the division of the property directed by Eliza Moodyman was acquiesced in by the children and ratified by Charles Moodyman himself when he executed the deeds at Giddings. The record does not establish this conclusion. In fact, all the evidence shows exactly the contrary. Charles Moodyman expressly repudiated his wife's distribution of the property. His only use of the plat was for the purpose of description of the land to be inserted in the deeds to his children in which he was "selling" them certain tracts. There is no testimony that Charles Moodyman adopted the plat in any sense. In fact, Eliza Moodyman had shown on the plat certain lots which she wanted to give to her two children by a former marriage. Charles Moodyman almost raved about that. He said his stepchildren had been responsible for his separation from his wife, and that they should have none of his property.

Not only did he repudiate the plat, but he said he was about to sell all of his property to an outsider. He then agreed to "sell" to any of his children, at their request, such of the land as they desired to buy. But he said he would not "give" it to them; that they must "pay" him for it. He said he needed money for his support; that he was too old to work and was in feeble health.

It is likely that Charles Moodyman would have made a deed, on the same terms, to Warner Moodyman, upon request. If the latter did not look after his interests and acquire such a deed, he has no right to complain. If Warner had bought from his father the land his mother wanted him to have, he would have fared, under the will, just as the other children did. It is fair to conclude that Charles Moodyman so wrote his will as to treat alike all of his children, provided they all showed the same interest in providing him with money in his old age and dying days. If Warner had purchased lots 2 and 5 and given his notes to his father in payment thereof, his money would have been returned to him, under the will, just as was true of the other children, and lots 2 and 5 would have been his by deed, and would not have been subject to distribution under the will. Under those circumstances, Charles Moodyman would not have been possessed of said lots 2 and 5 at the time of his death.

But we are not called upon to rely upon our view of the reasons which moved testator to write his will as he did. He had a right to do so without giving any reason whatever.

As said before, there is no evidence that Uloth or McNew, when visiting testator at Giddings, or at any other time, agreed that Warner Moodyman was to have lots 2 and 5. Nor did they tell him that they would accept the attempted division made by Eliza Moodyman, when they took the deeds from Charles Moodyman. Therefore they made no representations that could possibly have influenced testator to write his will as he did. Not only so, but there is no evidence that Charles Moodyman ever stated to Uloth or McNew that he wanted Warner to have lots 2 and 5. Consequently, they were not called upon to speak about the matter, and their silence could not under any theory be evidence of estoppel. Again, there is no evidence in the record of any act or statement on the part of testator in the presence or knowledge of plaintiffs in error with reference to his future will that was necessarily "inconsistent" with the way he finally wrote

it. Uloth and McNew never mentioned his will. They left him free, in that respect, as they should have done. They went there to buy land. They accomplished their purpose and left.

Our discussion of the facts heretofore given shows that the record does not begin to convict Uloth or McNew of such statements or acts as to show that they should be estopped under the rules laid down in case of Bynum v. Preston, supra. No statements or acts of any kind are shown which could have induced testator to change his plans about his will, if he did change them. Certainly, Uloth and McNew did not set out with the purpose of getting an advantage of Warner in the terms of his father's will.

Under the evidence before the trial court, the only proper judgment in that court would have been one awarding Lizzie Uloth and Mattie McNew each a one-fourth interest in said lots 2 and 5 in block 1.

Therefore we recommend that the judgments of the district court and Court of Civil Appeals be reversed, and the cause remanded to the former, with instructions to reform its former judgment so as to award to Lizzie Uloth and Mattie McNew each a one-fourth interest in said lots 2 and 5 in block 1, and to have said lots partitioned accordingly, subject to the homestead rights of Eliza Moodyman, as long as she desires to so occupy said lots.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals reversed, and case remanded to the district court, with instructions to reform its judgment so as to award to Lizzie Uloth and Mattie McNew each a one-fourth interest in lots 2 and 5 in block 1 of the Moodyman addition to Houston, and to partition said lots, subject to the homestead rights of Eliza Moodyman.