### STATES OIL CORPORATION et al. v. WARD et al. (No. 1110.)

(Court of Civil Appeals of Texas. El Paso. May 20, 1920. Rehearing Denied June 24, 1920.)

1. Mines and minerals ⬅⟿55(1)—Owner of fee may separate surface from minerals.

The owner of the fee may separate his estate in the surface from the minerals underneath, and sell the one and reserve the other.

2. Mines and minerals ⬅⟿55(2)—Instrument held not to retain title to minerals.

Deed whereby grantor mining company reserved the right at all times to enter on the land and prospect for coal and minerals, etc., and to open up mines, borings, etc., providing that coal and minerals taken from such mines and borings should be the property of the grantor, held not to have retained title to the minerals in place under the surface.

Appeal from District Court, Eastland County; Joe Burkett, Judge.

Suit by E. J. Ward and others against the States Oil Corporation and others. From judgment for plaintiffs, defendants appeal. Affirmed.

Scott, Brelsford & Smith, of Eastland, for appellants.

J. J. Butts, of Cisco, J. R. Stubblefield and Conner & McRae, all of Eastland, and Geo. E. Wallace and F. G. Morris, both of El Paso, for appellees.

### Statement of the Case.

HARPER, C. J. The agreed statement of facts shows: That the Central Texas Mining, Manufacturing & Land Company is the common source of title; that it executed the following instrument:

"C. T. M., M. & Ld. Co. to M. B. Owen. Deed. "The State of Texas, County of Harris.

"Know all men by these presents: That the Central Texas Mining, Manufacturing & Land Company, in consideration of $1,920, paid and secured to be paid as follows: [Here is noted the cash payment and notes, executed by M. B. Owen]—have granted, bargained, sold, and released, and by these presents do grant, bargain, sell, and release unto the said M. B. Owen, his heirs and assigns, all that certain lands, lots, and property situated in the county of Eastland, in the state of Texas. [Here follows the description of the lands.] To have and to hold all and singular the premises above mentioned unto the said M. B. Owens, his heirs and assigns, forever, and the said Central Texas Mining, Manufacturing & Land Company binds itself to warrant and forever defend, all and singular, the said premises unto the said M. B. Owens, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through, or under the said company, or its assigns or successors. But it is expressly agreed and stipulated that this deed is made subject to the following rights of the said mining company, each and all of which rights are hereby reserved and are not to pass by this deed:

"(1) The Central Texas Mining, Manufacturing & Land Company reserves the right at all times hereafter to enter upon the land hereby conveyed and prospect for and make surveys at will on any part of it for coal, minerals, stone, or any other valuable deposit, and to open up on said land and operate with all machinery, appliances, and attachments which it may deem necessary, mines, borings, and quarries, and the coal minerals, stone, or other valuable deposits found in and taken from all such mines, borings, and quarries shall be the property of said Central Texas Mining, Manufacturing & Land Company, and it shall have the right to remove the same, and for the purpose of ingress and egress to and from such mines, borings, and quarries a further right of way over the land hereby conveyed, 60 feet in width, to and from said mines, borings, and quarries, is hereby reserved. Notice of the location of said mine or mines, boring or borings, quarry or quarries, giving metes and bounds of the same and the number of acres of land included in said location, shall be filed for record in the Book of Deeds of Eastland county by the said mining company or its assigns, and no material shall be moved from said land until after the location has been recorded as aforesaid: Provided, however, that it shall not open any such mine, boring, or quarry, within 500 feet of the home residence of the owner of said land, or nearer than within 500 feet of any mine, boring, or quarry actually operated by the owner of said land, previous to the said location for mining or quarrying purpose by said mining company or its assigns. But if such mine, boring, or quarry shall be opened more than 500 feet from the homestead residence of such owner, then said railway company or its assigns shall have the right to follow the object of such mine under the entire premises of the owner, whoever he may be, and in any and all directions: And provided, further, that said company shall never occupy in the aggregate

more than ———— acres of the surface of the land hereby conveyed, exclusive of the right of way as herein reserved for railways and for ingress and egress to and from said mine or mines, boring or borings, quarry or quarries, or other excavation, but no location shall include a superfice of less than eight acres, nor shall any location be changed without the written consent of the owners of said land, which written consent shall likewise be recorded: And provided, further, that unless actual work shall commence upon the land described in said location within three years after the location has been recorded it shall be regarded as abandoned, and failure to work or operate said mines, borings, quarries, or excavations for any consecutive period of five years after work has been commenced shall also be regarded as an abandonment of said specific location, but the said company or its assigns shall be privileged at any time to remove its improvements that have been placed upon said lands: And provided, further, that if in opening or operating such mines, borings, or quarries, or in laying out and designating the right of way to and from them or any of them, it shall be necessary to pass through the inclosure of the owner or destroy any improvements of the owner before then made on said land, said company, or its assigns, shall have the right to do so on payment of their actual cash value, irrespective of their relation to the land, which shall be ascertained by arbitrators selected, one by each of the parties, and the two so selected to select another, if necessary, and their award shall be final; either party may take the initiative in having said award made, but no negligence or delay of either party in taking steps to have such award made shall prevent said mining company or its assigns from exercising all other rights and privileges reserved in this deed, and until such award shall have been made the owner shall not be entitled to maintain any action for damages or in restraint of the exercise of any right or privilege reserved in this deed.

"(2) If the vendee hereof or his assigns shall open or operate any mine or mines, boring, or quarries on said land for coal, stone, minerals, or other valuable deposits, he may do so subject to the reservations herein made for the benefit of said mining company and its assigns, and subject to the further condition that no mine, boring, quarry, or other means of removing valuable deposits shall be opened by the owner of said land on or under any land located as herein provided by the said company or its assigns for mining or quarrying purposes until after the location has been abandoned: And provided also, that while the said company, its agents, or its assigns shall be actually engaged in the work of prospecting for coal, minerals, stone, or other valuable deposits upon said land, the owner of said land shall not be privileged to open and operate any mine, quarry, or other means of removing valuable deposits from said land to the prejudice of the rights herein reserved to said company or its assigns for the period of 90 days after the work of prospecting has commenced: Provided, however, that the said company or its assigns shall be entitled to 5 per cent. of the coal, stone, minerals, or other valuable deposits which the owner of the land, or those opening or working said mine or mines may take therefrom for manufacture or

sale, and the said 5 per cent. of the coal, stone, mineral, or other products so mined or obtained shall be delivered to its authorized agent, or to its assigns, at the mines, boring, or quarry from which the same was taken, every 30 days, or oftener on demand, and if the owner of the land, or those opening or working said mine or mines, boring or borings, quarry, or excavation, shall find it necessary, or it be for their convenience, to remove the said material belonging to the said party of the first part, or its assigns, from the amount of said mine, mines, boring or borings, quarry, or excavations, the said material may be moved at his own cost and shall be placed at some convenient point adjacent thereto, and the said party of the first part shall be at no charge for the occupancy of the said land by the material so stored for its benefit until the same can be removed, and a lien is hereby given and created on the land hereby conveyed in favor of said mining company and its assigns for the value of whatever part of the article so mined, quarried, or taken from said land for manufacture or sale that may be due at the time of each demand."

Dated June 6, A. D. 1883, and duly acknowledged and recorded.

It is further agreed that there exists a regular chain of title deeds from M. B. Owen down to E. J. Ward, purporting to convey the lands described, and that such deeds are sufficient to convey all such title and interest as Owen or any of his vendees might lawfully convey; that no affirmative possession or action was ever taken by the Central Texas Mining, Manufacturing & Land Company under such rights, if any, in minerals or other valuable deposits in said land, or rights to acquire interest therein, as may have existed in said company after it executed said deed to M. B. Owens, until it sold through C. C. Gibbs, its trustee, duly authorized thereunto, its interests or rights to H. P. Brelsford on August 22, 1917, reserving one-eighth royalty in such minerals; that the defendants have acquired by regular transfers all such right and title as the respective vendors making same might lawfully have conveyed; that plaintiffs and those through whom they hold have and had adverse peaceable and undisturbed possession of the surface of said land, enjoying the fruits and revenues thereof, and all such possession of the mineral therein described in said deed to Owens as may be implied from such possession of the surface of said land, under deeds duly recorded, and paying all taxes thereon from the date of the deed of said company to Owens until the present time, and are now in possession thereof; and the defendants have taken no action to develop said land for the discovery of minerals thereunder, and have made no effort to exercise any right that they may have had in said minerals since June 6, 1883.

The appellees, N. J. Ward and Willie L., M., Jess, and Chunk Scarborough, instituted

this suit against appellants, the States Oil Corporation, H. P. Brelsford, Ed. W. Smith, and T. G. Jackson, and prayed for judgment decreeing that the instrument copied above be of no force and effect when this suit was instituted as to section 74, described therein, as to petroleum, oil, and for mineral, etc., and for grounds alleged: First. That it was not intended by said instrument to retain title to oil in and under the lands, but simply the minerals mentioned therein, and that it did not in fact retain ownership of the oil. Second. That plaintiffs and those under whom they claim have had peaceable, adverse, and continuous possession of the land, cultivating, etc., paying taxes, under deeds duly recorded for more than 30 years; therefore they had acquired any and all rights provided for in said instrument by limitation. Third. That it was agreed that the company or its assigns should proceed within a reasonable time to prospect for such minerals, but which has not been done; therefore if any claim or right ever existed same has been abandoned.

The defendants answered by general denial, and specially that they were the owners of the oil by virtue of the reservations in said deed contained, as the vendees of the original granting corporation, etc. The cause was submitted to the court, without jury upon the above agreed statement of facts, whereupon judgment was entered for plaintiffs, that the claim for oil is of no force or effect constitutes a cloud upon the title and decreed its removal, from which this appeal.

### Opinion.

The first assignment, submitted as a proposition, reads:

"The court erred in rendering judgment for plaintiffs, because under the agreed facts the mining company, in conveying the surface of the land to Owens, reserved the title to the minerals, which includes petroleum oil, underlying the land involved, together with all rights incident thereto, and the defendants are now the owners of the minerals and mineral rights so reserved to the mining company, and were entitled to judgment so decreeing."

There are several other assignments, but we think they present the same question in a different form; appellants contending for a construction of the deed to the effect that title to all minerals, including oil, has been retained or reserved in the mining company and its assigns. The appellees insist that it only reserves the right to prospect for minerals which shall become the property of the company only after extraction from the ground, and the company and its assigns having failed to exercise the privilege for 30 years, it has become a stale demand.

[1] Appellants' proposition that the owner of the fee may separate his estate in the surface from the minerals underneath and sell the one and reserve title in the other is a correct proposition of law, but the question for determination here is, Did the mining company, by the instrument relied upon by appellants, reserve the title to the minerals or simply reserve the right to prospect for them and to become the owners thereof after they had been extracted from the lands? The first part of the instrument to be construed is a warranty deed to Owens conveying the whole title. The reservations following are:

"The Central Texas Mining, Manufacturing & Land Company reserves the right at all times hereafter to enter upon the lands hereby conveyed and prospect for and make surveys at will upon any part of it for coal, minerals, etc., * * * and to open up on said land * * * mines, borings, * * * etc., and the coal, minerals, * * * etc., found in and taken from all such mines, borings, * * * shall be the property of said mining company."

[2] Clearly, these words do not retain the title to the minerals in place under the surface, but simply prescribe the steps by which they may be taken from the ground, and expressly provide that "the minerals found and taken from the mines and borings shall be the property of said company." This expression clearly precludes the idea that the title to the minerals was retained in the mining company by the reserving clauses of the instrument at the time of its execution, and declares that the minerals may become the property of the grantor only after they have been taken from the ground. National Oil & Pipe Line Co. v. Teel, 67 S. W. 545. And it is agreed that no minerals have been taken out and no steps have been taken toward acquiring the right to do so by the original grantor, nor by any of the assignees or plaintiffs.

Since we have concluded that the instrument relied upon does not retain title to the minerals, and since the appellants have not asked that they be adjudged to still have the right to prospect for the minerals, it becomes unnecessary to pass upon the question of stale demand, as suggested by appellees.

Affirmed.