STATES OIL CORPORATION et al. v. WARD et al. (No. 284–3531.)

(Commission of Appeals of Texas, Section A. Jan. 11, 1922.)

1. **Mines and minerals ⚖══55(2)—Deed held to reserve minerals, and not mere right to prospect therefor.**

A deed reserving to the grantor the right to enter on the land and prospect for coal, minerals, etc., and open up and operate mines, quarries, etc., and providing that the coal, minerals, etc., should be the property of the grantor, and further providing that on certain conditions the vendee might open or operate mines, quarries, etc., but that the vendor should be entitled to 5 per cent. of all the coal, minerals, etc., mined or obtained, reserved a present title to the minerals, and not a mere right to become the owners thereof by prospecting for and extracting them from the lands, though there was a provision that a failure to proceed with operations at any particular location should be considered an abandonment of that specific location.

2. **Mines and minerals ⚖══55(8)—Plea of stale demand inapplicable when legal title reserved.**

Where a deed reserved the legal title to the minerals in the land conveyed, a plea of stale demand could not apply.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by E. J. Ward and others against the States Oil Corporation and others. A judgment for plaintiffs was affirmed by the Court of Civil Appeals (223 S. W. 250), and defendants bring error. Reversed and rendered.

Scott, Brelsford & Smith and Harry E. Pratt, all of Eastland, for plaintiffs in error.

J. R. Stubblefield and Conner & McRae, all of Eastland, and J. J. Butte, Geo. E. Wallace, and F. G. Morris, all of El Paso, for defendants in error.

RANDOLPH, J. This suit was filed by E. J. Ward and others, who will hereinafter be called plaintiffs, against States Oil Corporation and others, who will be hereinafter referred to as the Oil Company or defendants. The plaintiffs, who had conflicting interests, agreeing to sue jointly and to settle their differences in other litigation, sought to cancel certain reservations in a deed from the Central Texas Mining, Manufacturing & Land Company, to M. B. Owens, or, in the alternative, that the reservations in said deed be held to not include within its meaning petroleum oil, and for judgment removing whatever cloud was cast on plaintiffs' title by reason of such reservations.

The case was submitted to the district court of Eastland county upon an agreed statement of facts, and that court rendered judgment in favor of plaintiffs, practically as prayed for. From this judgment appeal

was taken to the Court of Civil Appeals for the Second Supreme Judicial District, and was from there transferred by the Supreme Court to the Court of Civil Appeals for the Eighth District. That court affirmed the judgment of the district court (223 S. W. 250), and, the Supreme Court having granted a writ of error, the case has been referred to this section of the Commission of Appeals for consideration.

The Mining Company deeded certain land in Eastland county on the 6th day of June, 1883, to N. B. Owens, and the deed was recorded in the deed records of that county on the 8th day of September, 1883. The conveyance to Owens, regular in form as a warranty deed, had appended as a part thereof reservations, which reservations will later be set out in so far as is necessary for the determination of the case.

[1] The honorable Court of Civil Appeals in their opinion affirming the case hold that the question in the case is:

"Did the Mining Company, by the instrument relied upon by appellants [States Oil Corporation and others] reserve the title to the minerals or simply reserve the right to prospect for them and to become the owners thereof after they had been extracted from the lands?"

In arriving at the answer to the question thus propounded by them that court announces the following conclusions:

"Clearly these words do not retain the title to the minerals in place under the surface, but simply prescribe the steps by which they may be taken from the ground, and expressly provide that 'the minerals found and taken from the mines and borings shall be the property of said company.' This expression clearly precludes the idea that the title to the minerals was retained in the Mining Company by the reserving clauses of the instrument at the time of its execution, and declares that the minerals may become the property of the grantor only after they have been taken from the ground."

To sustain this position the Court of Civil Appeals give a partial quotation from the reservations contained in the deed. It occurs to us that the excerpt from the reservations so given by that court is not quite sufficiently full to give the intent and purpose of that instrument. In the first place, the fee-simple title to the land and all "coal, minerals, and other valuable deposits" was vested in the Mining Company. It delivers to Owens a warranty deed to all of the property except such portions as is by the terms of the deed reserved to it. It has never parted with the title to the minerals and "other valuable deposits," unless it does so in the very deed it makes to Owens. This being true, what property or property rights did it reserve? This deed, after apt words of conveyance, description, and warranty, recites:

"But it is expressly agreed and stipulated that this deed is made subject to the following rights of the said Mining Company, each and all of which rights are hereby reserved and are not to pass by this deed.. 1. The Central Texas Mining, Manufacturing & Land Company reserves the right at all times hereafter to enter upon the land hereby conveyed and prospect for and make surveys at will on any part of it for coal, minerals, stone, or any other valuable deposit, and to open up on said land and operate with machinery, appliances, and attachments, which it may deem necessary, mines, borings, and quarries, and the coal, minerals, stone, or other valuable deposits found in and taken from all such mines, borings, and quarries, shall be the property of said Central Texas Mining, Manufacturing & Land Company," etc.

Certainly, if there were no coal, minerals, stone, or other valuable deposits on or in the land, then there would have been none to convey. But, if there were any of those substances present in the land, and search for them could have developed that fact, the language of the instrument reserving them from the sale was just as potent to reserve the present title in the grantor as if the conveyance had been made to him. The expression "and the coal, minerals, stone, or other valuable deposits found in and taken from all such mines, borings, and quarries shall be the property of said Central Texas Mining, Manufacturing & Land Company, and it shall have the right to remove same," is clearly a reservation of present title, and evidently was not intended to mean a mere attempt to prescribe the steps by which they might be taken from the ground. There was nothing stipulated as a condition precedent for the Mining Company to pay or to perform in order to vest title in it, and for it to earn the title to the minerals. It is true that there was a provision in the reservation giving a method of making locations and providing when such locations were made that a failure to proceed with operations for three and five years should be considered an abandonment of such specific location, but this was a condition subsequent, and applied only to locations made, not to the reservations as a whole, and was evidently intended only as a protection to the surface owner against repeated entries without a continuance of operations.

In the case of Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989, the Supreme Court, construing a number of so-called oil leases with the intention of determining the estate of the Texas Company therein for taxation purposes, where the words "granted, bargained, sold, and conveyed" were used to transfer "all the oil, gas, coal, or other minerals in and under" the particular tract, Chief Justice Phillips, speaking for the court, says:

"It will be observed that they [referring to the leases] constitute no mere demise of the premises for a given period, as in the case of an ordinary leasehold. Nor do they amount simply to a grant of the right to prospect upon

the land for oil or gas and reduce those substances to possession and ownership. * * * The rights of the grantee are made subject to forfeiture, if operations for the drilling of a well for oil or gas are not begun within one year from the delivery of the instrument, or if the payment of the amount provided in lieu of such commencement is not made; * * *

"It will be further noted that no condition is expressed or act required of the grantee which preceded the vesting of such estates as the instruments created. Upon penalty of forfeiture of 'the rights and estates hereby granted,' the grantee was required to begin operations for the drilling of a well for oil or gas within one year or pay a stipulated amount quarterly during the extension period provided; but it was the manifest purpose of the parties that the estate created should constitute a present grant, and that the grantee should perform these acts after taking possession, which rendered them conditions subsequent."

The contention that the title to the minerals was not reserved by the language of the instrument, and that the minerals may become the property of the Mining Company under its terms only after they have been taken from the ground, cannot be maintained in view of the decision in the last above quoted case. In that case Chief Justice Phillips further says:

"This brings us to the consideration of the latter question, and the contention of the plaintiff in error that these substances are incapable of ownership as property until severed or extracted from the ground, and that therefore these instruments conferred upon it no more than a mere use of the surface of the ground and the right to take them from it, amounting only to a privilege belonging to the land and taxable as a part of it against the owner of the fee, but vesting it with the title to no property whatever. It may be remarked, we think, with propriety, that this position is in marked contrast with the solemn assertion of the instruments themselves, exhibited in the record by means of a common form evidently prepared by the plaintiff in error for use in its business operations, that they were not intended as 'mere franchises,' but as 'conveyances of the property and privileges described, and were so understood by all parties thereto.' * * * Being a part of the realty while in place, it would seem to logically follow that, whenever they are conveyed while in that condition or possessing that status, a conveyance of an interest in the realty results."

There is another clause contained in the instrument making the reservations which strengthens the contention that the minerals were at that time conveyed, and we copy it for the purpose of giving its exact language:

"If the vendee hereof · or his assigns shall open or operate any mine or mines, borings, or quarries on said land for coal, stone, minerals, or other valuable deposits, he may do so subject to the reservations herein made for the benefit. of said Mining Company and its assigns and subject to the further condition that no mine, boring, quarry, or other means of removing valuable deposits shall be opened by the owner of said land on or under any land located as herein provided by the said company or its assigns for mining or quarrying purposes until after the said location has been abandoned, and provided also that while the said company, its agents or its assigns for mining or quarrying purposes until after the said location has been abandoned, and provided also that while the said company, its agents or its assigns, shall be actually engaged in the work of prospecting for coal, minerals, stone, or other valuable deposits upon said land, the owner of said land shall not be privileged to open and operate any mine, quarry, or other means of removing valuable deposits from said land to the prejudice of the rights herein reserved to said company or its assigns for the period of ninety days after the work of prospecting has commenced, provided however, that the said company, or its assigns, shall be entitled to five per cent. of the coal, stone, minerals, or other valuable deposits which the owner of the land, or those opening or working said mine or mines, may take therefrom for manufacture or sale, and the said five per cent. of the coal, stone, minerals, or other products so mined or obtained shall be delivered to its authorized agent or to its assigns, at the mines, boring, or quarry from which the same was taken, every thirty days or oftener on demand, and if the owner of the land, or those opening or working said mine or mines, boring or borings, quarry or excavation, shall find· it necessary, or it be for their convenience to remove the said material belonging to the said party of the first part, or its assigns, from the mouth of said mine, mines, boring or borings, quarry or excavations, the said material may be moved at his own cost and shall be placed at some convenient point adjacent thereto, and the said party of the first part shall be at no charge for the occupancy of the said land by the material so stored for its benefit until the same can be removed, and a lien is hereby given and created on the land hereby conveyed in favor of said mining company and its assigns for the value of whatever part of the article so mined, quarried, or taken from said land for manufacture or sale that may be due at the. time of each demand."

It will be observed that this clause in the instrument recognizes in the Mining Company the ownership of the minerals, etc. It is expressly provided that the owner of the fee in the land may prospect for coal, stone, minerals, or other valuable deposits, but for that privilege he must pay to the Mining Company a rental estimated at 5 per cent. of the coal, stone, minerals, or other valuable deposits which he or those working said mine or mines may take therefrom for manufacture or sale, and the said 5 per cent. of the coal, stone, minerals, or other products sold, mined, or obtained shall be delivered to its authorized agent, or to its assigns, at the mine, etc. This provision is contained in the

very instrument itself, and at the very time that the deed was delivered, and makes the owner of the fee attorn to the owner of the minerals for his right to appropriate any of the minerals under the surface.

[2] The Court of Civil Appeals deemed it unnecessary to pass upon the question of stale demand because of their conclusion that the instrument relied upon did not retain title to the minerals, and that, since the defendants had not asked that they be adjudged to still have the right to prospect for the minerals, it became unnecessary for them to pass upon that question. This conclusion is naturally held by us to be erroneous in view of our holding that the legal title to the minerals was reserved in the defendants by the deed; hence the plea of stale demand cannot apply.

The case of Houston Oil Co. v. Hamilton et al., 109 Tex. 270, 206 S. W. 817, in our opinion settles this contention against the claim or plea of stale demand. Justice Greenwood, in passing on the question as to whether or not the owner of growing timber land can, by contract, invest a purchaser, or his assigns, with title to the timber as an interest in the land, or with the right to cut and remove the timber, or any part thereof, at such time or times throughout the future as the purchaser, or the assigns, may elect, and to appropriate the timber after it has become a chattel by severance, cites Lodwick Lumber Co. v. Taylor, 100 Tex. 272, 98 S. W. 238, 123 Am. St. Rep. 803, and announces this doctrine:

"Where the terms of a writing plainly evidence the intent of the owner to grant to a purchaser, or his assigns, a perpetual estate in growing trees, as part of the land, or a right, to be exercised at any time at the will of the purchaser or of his assigns, to enter the land and sever and appropriate the trees, then such writing cannot be construed as implying that the trees must be removed within only a reasonable time, for an obligation cannot be implied in contradiction of the precise agreement by which the parties have bound themselves."

We therefore hold that the reservations contained in the deed from the Mining Company to Owens retained in that company the present legal title to the coal, minerals, stone, and other valuable deposits, and that stale demand as a defense cannot be maintained by plaintiffs to destroy defendants' title to the oil, and their right to enter and reclaim same, and recommend that the judgments of the Court of Civil Appeals and of the district court be reversed, and rendered for defendants.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.