HART et al. v. ASSOCIATED OIL CO. et al.*
(No. 1591.)

(Court of Civil Appeals of Texas. El Paso. April 3, 1924. Rehearing Denied May 1, 1924.)

I. Evidence ⟐186(6)—Copy of contract for sale of mineral rights held sufficiently authenticated.

Copy of contract of sale of mineral rights *held* sufficiently authenticated, where witness, whose official position was looking after records of vendor railroad company's lands, testified that he kept exact copies of all originals, and that copy presented in evidence was an exact copy, though it was unsigned and certificate of acknowledgment was defective.

2. Mines and minerals ⟐48, 55(I) — Petroleum oil and gas are minerals, and may be conveyed apart from land.

Petroleum oil and gas are minerals, and may be owned and conveyed separately and apart from surface of land.

3. Mines and minerals ⟐55(I) — Reservation of mineral rights after full grant of fee held void.

Where full grant of fee in land was made in a deed by granting clause without reservation, a reservation in reddendum clause of mineral rights in land granted was repugnant and void.

4. Mines and minerals ⟐55(2)—Deed construed as to scope of reservation of mineral rights.

Under conveyance of land reserving to grantor a strip 200 feet wide for a railway right of way, and mineral rights on "said land," *held*, that reservation was intended to apply to land granted as well as to strip reserved.

Higgins, J., dissenting in part.

Appeal from District Court, Eastland County; Geo. L. Davenport, Judge.

Suit by the Associated Oil Company, a corporation, and another against I. N. Hart and others. Judgment for plaintiffs, and defendants appeal. Reversed and rendered.

D. K. Scott, of Cisco, and J. Tom Higgins, of Lampasas, for appellants.

Burkett, Orr & McCarty, of Eastland, and Baker, Botts, Parker & Garwood, of Houston, for appellees.

WALTHALL, J. This suit was brought by the Associated Oil Company, a corporation, and the Rio Bravo Company, a corporation, plaintiffs herein, against I. N. Hart and wife, Allie Hart, and I. N. Hart, as community administrator of himself and his former wife, Katie Hart, defendants, to recover the title and possession of all the oil, gas, coal, and other minerals in, under, and upon the east ½ of the S. W ¼ and the N. W. ¼ of the S E. ¼ of section 57, block 4, Houston & Texas Central Railway Company survey of lands in Eastland county, Tex., and prayed for an injunction perpetually en-

---

joining the defendants from in any manner resisting and contesting plaintiffs' right of entry upon and their use of said land for the purpose of prospecting for and developing the oil, gas, coal, and other minerals, and to produce and remove same from said land.

Plaintiffs allege title to be in themselves to the oil, gas, coal, and other minerals in, under, and upon said land, and the right and perpetual easement to go upon said land to prospect for and develop said minerals, and to produce and remove same from said lands, said claim of title to said minerals and said right of ingress and egress being based upon certain reservations in the deed conveying said land and hereafter more fully stated, and deny the title to any of said minerals to be in defendants; but that defendants, owning the surface, claim to own said minerals, and deny plaintiffs' right of access to said land for the purpose stated. Plaintiffs' suit in other respects is in the usual form of trespass to try title.

Defendants answer by general denial, not guilty, plea of the ten years' statute of limitations, plea of ten years' limitation under memorandum of title, specially defining the boundaries. Defendants further answer that they own said minerals and mineral rights under said land as hereafter more fully stated, and pray that the cloud cast upon their title by plaintiffs' claim of title be removed.

The case was tried without a jury, and the issues both of fact and law are more fully made to appear by the findings of fact filed by the trial court, as follows:

"(1) That the plaintiff Associated Oil Company is a corporation duly chartered under the laws of the state of California, and has a permit to do business in Texas; that the Rio Bravo Oil Company is a corporation duly chartered under the laws of the state of Texas; that the defendants, and each of them, reside in Eastland county, Tex.; that the land involved in this suit is located and situated in Eastland county, Tex.

"(2) That the state of Texas has heretofore issued its unconditional patent to section 57, block 4, Houston & Texas Central Railway Company survey, which said patent included all the land described in plaintiff's petition herein filed, to the said Houston & Texas Central Railway Company.

"(3) That the Legislature of the state of Texas, by a special act approved on the 21st day of September, 1866, granted to the said Houston & Texas Central Railway Company 16 sections of land, of 640 acres each, for each mile of railroad it had constructed or might thereafter construct 'in accordance with the provisions of the charter of said railway company'

"(4) That by deed executed January 30, 1877, the said Houston & Texas Central Railway Company conveyed the land described in plaintiff's petition filed in this cause to Jane R. Smith; that the reddendum clause in said deed reads as follows:

"'It is expressly agreed and stipulated that the vendor's lien is retained until the hereinbefore described note, with interest, etc., thereon, in accordance with the tenor, effect, and reading, shall be fully paid, upon which this deed will become absolute, a strip 200 feet wide for right of way and other railroad purposes should a branch of its road be located on the premises, and all minerals in and on said land, together with the right of way for convenient access thereto, are reserved and excepted from this grant and conveyance.'

"(5) That by deed dated January 18, 1889, Charles S. Dillingham, as special master commissioner, in compliance with a certain decree rendered in the Circuit Court of the United States for the Eastern District of Texas, in the Fifth Circuit Court, on May 4, 1888, in a certain cause then pending in said court under the title of 'Nelson S. Easton and James Rintoul, Trustee, and the Farmers' Loan & Trust Company, Trustee, v. The Houston Texas Central Railway Company et al.,' bearing the number 198 consolidated cause, on the chancery docket of said court, sold and conveyed to Frederic P. Olcott 'all lands, town lots or blocks, real estate, or interests in real estate, of every kind and description,' to which the said Houston & Texas Central Railway Company 'has title, claim, or equitable ownership,' except the land and other property subject to the first mortgage on the Waco & Northwestern division, dated June 16, 1873, but the land so excepted from said conveyance did not include nor affect any part of the land described in plaintiff's petition filed herein; that Nelson S. Easton and James Rintoul, as trustees of the main line first mortgage of the Houston & Texas Central Railway Company, dated July 1, 1866, and of the Western division first mortgage of said railway company, dated December 1, 1870, and Farmers' Loan & Trust Company, as trustee of the main line and western division consolidated mortgage, dated October 1, 1872, and of the general mortgage, dated October 1, 1872, and of the general mortgage of said railway company, dated April 1, 1881, and of the Waco & Northwestern division consolidated mortgage, dated May 1, 1875, Benjamin A. Shepherd, as sole surviving trustee of the income and indemnity mortgage of said railway company, dated May 7, 1877, and the Houston & Texas Central Railway Company, joined the said Charles S. Dillingham, special master commissioner aforesaid, in the execution of said deed.

"(6) That the deed from Charles S. Dillingham, Special Master Commissioner, et al., to Frederic P. Olcott, conveyed all the right, title, and interest of said Houston & Texas Central Railway Company in and to the land described in the plaintiff's petition, which was by said railway company retained or excepted from the conveyance by it to the said Jane R. Smith.

"(7) That by mesne conveyances the plaintiffs acquired all right, title, and interest in and to the land described in their petition filed herein that was acquired by Frederic P. Olcott under the deed from Charles S. Dillingham, Special Master Commissioner, et al.

"(8) That the defendants by mesne conveyances acquired all right, title, and interest in said land described in plaintiffs' petition herein that was acquired by Jane R. Smith under the deed from Houston & Texas Central Railway Company."

The court entered judgment for plaintiff for all of the minerals in said land, and granted the injunction prayed for. Defendants excepted, and prosecute this appeal.

### Opinion.

[1] The evidence of the loss of the contract of sale from the Houston & Texas Central Railway Company to the Rio Bravo Oil Company, and containing the approval by the Southern Pacific Railway of said sale, conveying certain minerals formerly reserved in sale by the Houston & Texas Central Railway Company, and the effort to discover the original without being able to do so, was sufficient to admit secondary evidence of the contents of said instrument.

The secondary evidence of the same contract of sale, and admitted in evidence over objections, consisted of a purported office copy of said contract or agreement. It recites that the said railroad company, grantor, has caused the instrument to be signed by its proper officers, and attested by its corporate seal, but the copy does not show the signature of the signing officer, nor the name of the attesting officer, and the certificate of acknowledgment is blank as to the names both of the officer signing the agreement and the notary public.

The proposition is that the unsigned, unauthenticated, purported copy of the instrument is inadmissible for any purpose.

The witness Holly testified for appellee, and, after stating the efforts made, in connection with others, to find the original instrument and his official position and his duties to be that of looking after the records of the land department of the Southern Pacific Railway Company, said:

"I kept copies of these instruments in my files; exact copies of the originals. I delivered to Mr. Smith of Baker, Botts, Parker & Garwood a true copy of that instrument. This is the copy. This is a true copy. * * * I say that the original, of which this is supposed to be a copy, was signed and acknowledged and all that sort of thing."

The predicate for the admission of the copy of the contract was sufficiently laid to admit of its introduction in evidence.

It is insisted under several propositions, in substance, that there was no evidence supporting the court's findings that the land in controversy was not included in the conveyance, from Dillingham, receiver, to Geo. E. Downs; and no evidence that the mineral in controversy was included in the conveyance from Dillingham, receiver to F. P. Olcott.

Without stating the several conveyances through which appellees claim title to the minerals in the land in controversy, for the sake of brevity it might be said, as indicated in the court's findings of fact and conclusions of law that appellees claim title through Dillingham, receiver, to F. P. Olcott, and not through Dillingham to Geo. E. Downs. On May 4, 1888, the United States Circuit Court in the case then pending in that suit, entered its final decree in the receivership proceedings directing Dillingham, as commissioner, to sell all the properties belonging to the Houston & Texas Central Railway Company. No lands other than those of the above-named railway company were embraced in the receivership, and no other lands were directed to be sold, or were sold. The burden was upon appellee to show that the land in controversy, containing the minerals sued for and reserved in the conveyance, was embraced in the land sold to Olcott, a remote grantor of the title under which appellees claim title.

Appellees refer us to portions of the record as sufficiently distinguishing the Olcott lands from the Downs lands; but we have been unable to identify the one from the other, as the county or counties in which the Downs lands are located are not stated. It is insisted by appellees that the record shows that the Houston & Texas Central Railway Company had not acquired the title to the lands involved in this suit at the time it acquired the Downs lands on June 16, 1873, and that the only lands acquired by Downs were the lands included in the mortgage indicating the parcel of lands sold to him. The mortgage is not before us from which might be disclosed the county or counties in which the Downs lands were located, or that none of them were in Eastland county. While, as pointed out by appellees, the patent to the lands involved here had not been issued by the state until January 30, 1888, the record shows the land certificate on which this land was patented was issued in 1868, a date several years prior to the mortgage indicating the Downs lands, and there is nothing indicating the date of the location of the certificate. The certificate was necessarily located prior to the issuance of the patent, and the date of its location not being made to appear, the date of the patent does not aid us in identifying the land as the lands sold to Olcott and not to Downs.

The Houston & Texas Central Railway Company, on the 8th day of January, 1877, some ten years prior to the issuance of the patent, sold the land in which it undertook to reserve the right of way and the minerals to "J. R. Smith, her heirs, and assigns." The record before us describes the lands sold by metes and bounds, but as being a part of "section 59, block No. 4, of the Houston & Texas Central Railway Company's lands in Eastland County," and in the reddendum reciting "a strip 200 feet wide for right of way, and other railroad purposes, should a branch of its road be located on the premises, and all mineral in and on said land, and the license to search for and work the same together with the right of way for convenient access thereto are re-

(261 S.W.)

served and excepted from this grant and conveyance." The above reservation of the mineral in the land conveyed to Mrs. Jane R. Smith, is made the basis of the claim for their title by appellees in this suit. It is noted that the survey number is 59, and of the Houston & Texas Central Railway Company surveys, while the survey number of the land sued for is 57, and of the Houston & Texas Central Railway Company's survey, both described as being in Eastland county. There are other discrepancies as to description of the land involved. in the record, which may be but clerical errors, and we feel disposed to so regard them, as appellants have not referred to them, either in their brief or oral argument and both appellants and appellees have regarded the land occupied by appellants and the land conveyed to Mrs. Jane R. Smith as identical and as being a part of section 57, block 4, of the Houston & Texas Central Railway Company's lands in that county. Mrs. Jane R. Smith is the remote grantor of appellants, and in some of the subsequent deeds the land is described as survey 57, block 4, Houston & Texas Central Railway Company's lands.

It is insisted by appellants that there is no evidence authorizing the court's finding that at the time the Houston & Texas Central Railway Company executed the deed to Jane R. Smith the word "minerals" would and did include oil and natural gas, and that same could not have been in contemplation by the parties at said time, no oil or gas being then known in this state, and mutually understood to have been conveyed or reserved. No parol evidence was introduced as to the intention of the parties with reference to the reservation.

[2] Appellees introduced in evidence certified copies of special acts of the Texas Legislature, two of 1866, and one of 1871, acts to incorporate companies to engage in mining for petroleum or rock oil, and other minerals. The counties mentioned in which such corporations were to operate are in the southeast portion of the state, but the evidence does not show that petroleum oil or gas was mined by any of said corporations. The courts in this state have uniformly held that petroleum oil and gas are minerals, and may be owned and conveyed separate and apart from the surface of the land. The propositions present the question that, where such minerals were not known to exist at the time of the conveyance, and nothing to show that the parties to the conveyance had in mind the existence of such minerals, would the deed, having the reservation, and excepting therefrom minerals in the land, convey the minerals? that is, did the minds of the parties to the deed meet upon the question of the mineral reservation?

The mineral in place in the land is a part of the corpus of the estate, and not a mere incorporeal right; in other words, an ex-

clusive and assignable interest in the land itself. It is insisted by appellants that no parol evidence was introduced ·to guide the court upon the determination as to what the parties had in mind in making the deed, and that what the parties had in mind in the use of the word "minerals" must be determined from the generally accepted use of the word "minerals" under the light then existing; that is, if petroleum oil and gas were intended to be included in the reservation by the use of the word "minerals," the deed would necessarily have to specify oil ·and gas, where oil and gas were not known to exist in that section of the country at that time. If no mining had been done in Eastland county prior to and at the time of the making of the deed to Jane R. Smith, and no minerals were then known to exist, under the contention of appellants, the reservation of minerals in the land could have no application.

The question is not new as to lands sold under acts of Congress, and lands owned by the state, and classified, and sold as classified, as agricultural and mineral lands. The decisions of the courts of the United States in regard to unknown minerals in lands sold under acts of Congress, and the courts of this state, on the same question under its statutes as to public lands, are uniform under similar facts.

They hold, as we understand them, that in public lands not known to contain valuable minerals, purchased on the faith of a conveyance in fee by the state, after classification by it as agricultural and not mineral bearing, and even though the law reserves to the state mineral in the land sold by it, the purchaser acquired the right to the mineral where the land was not known, at the time of the sale, to contain valuable minerals. Deffeback v. Hawke, 115 U. S. 392, 6 Sup. Ct. 95, 29 L. Ed. 423; Davis v. Weibbold, 139 U. S. 507, 11 Sup. Ct.· 628, 35 L. Ed. 238; Shaw v. Kellogg, 170 U. S. 312, 18 Sup. Ct. 632, 42 L. Ed. 1050; Burke v. Southern Pacific Ry. Co., 234 U. S. 669, 34 Sup. Ct. 907, 58 L. Ed. 1527; Schendell v. Rogan, 94 Tex. 585, 63 S. W. 1001; Greene v. Robison, 109 Tex. 367, 210 S. W. 498.

In the last-cited case Judge Phillips, after holding that the act of 1883 (Acts 18th Leg. c. 88) did not reserve to the state mineral in the state land not then known to exist, though the act reserved to the state the minerals on all lands sold under the act, said:

"If such a reservation did not operate on lands not known to be mineral, how can a reservation of minerals themselves operate on minerals not known to exist?"

As said by the Austin Court of Civil Appeals in Carothers v. Mills, 233 S. W. 155, the courts in the several cases referred to were considering the meaning of several acts of the Legislature, in the disposition of the public lands, and the decisions doubtless

turned largely on what was conceived to be the public policy of the state with reference thereto, however, it is also certain that the Supreme Court gave some effect to the consideration that it appeared that the lands in question were not known to contain minerals at the time they were classified and sold, and that by analogy, in principle at least, the reasoning was applicable to the case then under consideration; that there was no difference in principle between the rules of construction in ascertaining the legislative intention or the effect of contracts with the state and those applying to ascertain the all-controlling question of intention of parties to a private contract. Certainly the reasoning of the rule stated in the case of Greene v. Robison applies to private contracts, where it is said the act provided no protection for the owner of such land in respect to the possible location of mining claims upon the surface, as to which, under any view his right would be paramount. It provided for no payment for the taking of the surface, though, if it applied to such land, under its broad and literal terms locations for separate mines over the entire surface of the previous grant might be authorized and permitted. The whole subject was left untouched and unregulated. From which reasoning and other matters stated, the court in the Greene v. Robison Case concluded:

"This shows plainly, we think, that the Legislature did not intend that lands so sold should be subject to such claims where at the time of their sale the existence of minerals in them was unknown."

The exception from the grant evidently reserves something not then known to exist; the result is that it leaves open for indefinite time, to all futurity, the determination of whether that which an ordinary grant purports to pass is within the exception; as said in Greene v. Robison Case, the owner of the fee in the surface would never be free from invasion under the right of the grantor to at any time explore it, and all of it, or to authorize its exploration. He never would know when his right to undisturbed possession of even the surface had matured. It never would mature.

From the reasoning of the courts in the cases above referred to and their holdings, we think the better reasoning is that the minerals not known to exist beneath the surface of the land were not intended by the parties to the deed to be reserved from the grant of the land itself. We think the above is not necessarily in conflict with Luse v. Boatman (Tex. Civ. App.) 217 S. W. 1096, or with States Oil Corporation v. Ward (Tex. Com. App.) 236 S. W. 446, both apparently on the facts distinguishable from this case. However, lest we should be in conflict with the Luse v. Boatman Case, and the States Oil Corporation v. Ward Case, and Luse

v. Parmer (Tex. Civ. App.) 221 S. W. 1031, we have thought it best not to conclude this case on the above issue of minerals not known to exist in the land at the time of the making of the deed to Jane R. Smith as not being within the contemplation of the parties, but prefer to base our holding as to the title to the minerals in the land in question on the repugnancy between the granting clause in the deed and the reddendum clause, in which the reservation of the minerals is found.

The deed from the Houston & Texas Central Railway Company to Jane R. Smith is sufficiently stated in the fourth finding of the trial court. The granting clause of the deed is in the usual form of conveyances of land, and the reddendum clause following the covenant of warranty, under which the reservation of the minerals in the land appears, is as above stated by the court.

[3] Appellants insist, under several propositions, that, when the full grant of the fee in the land is made in a deed by the granting clause any reservation tending to destroy the fee granted, such reservation or exception following the granting clause is repugnant to the granting clause and is void, and refers us to a number of Texas and other cases as so holding.

In McDaniel v. Puckett et al. (Tex. Civ. App.) 68 S. W. 1007 (96 Tex. 94, 70 S. W. 739, affirming the holding), it was held that, where the granting clause of a deed was of the grantor's whole estate in the premises granted, with covenant of warranty, and the exception following such granting portion of the deed reserved a certain interest in the premises, the exception being repugnant to the expressed intention of the grantor as expressed in the grant, the grantor was estopped to claim such interest. To the same effect are the following:

Jung et al. v. Petermann et al. (Tex. Civ. App.) 194 S. W. 202 (a writ of error refused), in which the deed contained covenants of warranty, and followed by a reservation of the homestead right until her death, held the reservation tended to depreciate or destroy the grant, and was of no effect, and stating the rule as above.

In Koenigheim v. Miles, 67 Tex. 113, 2 S. W. 81, Judge Gaines clearly illustrates the rule as follows:

"If a grantor convey 'lots one, two, three and four, in block five,' by name, and except 'lot one,' the exception is necessarily repugnant to the grant, and is therefore void. The inconsistency results from the fact that the thing granted and the thing excepted are both specially named, and is the same in principle as if one grant a tract of land in one part of the deed and except the whole in another. But if the grantor convey, by general description, such as 'block five,' in a certain town, and except 'lot one' of said block, then the latter is construed merely to limit the general description of the premises in the grant, and is not, therefore, repugnant to it, and it will stand.

This is certainly the rule where the exception appears in the description which is contained in the granting clause."

Here the land granted is fully described in the granting clause and without reservation or exception, but, after warranting title to the land, granted, the mineral, a part of the thing granted, is reserved. The rule is as claimed by appellants where, as here, the reservation or exception is out of the thing previously granted. See, also, the following where the rule is further illustrated: Arden v. Boone (Tex. Civ. App.) 187 S. W. 995 (case affirmed); Carlee v. Ellsberry, 82 Ark. 209, 101 S. W. 407, 12 L. R. A. (N. S.) 956, 118 Am. St. Rep. 60, from the Supreme Court of Arkansas, referring to and quoting from many cases and adhering to the rule that, having once granted an estate in his deed, no subsequent clause, even in the same deed, can operate to nullify it; Levy v. McDonnell, 92 Ark. 324, 112 S. W. 1002, 135 Am. St. Rep. 183.

We could multiply cases holding that a reservation in a deed which is repugnant to the grant is void.

[4] It is also insisted by appellants that the reservation reading "a strip two hundred feet wide for right of way and other railroad purposes, should a branch of its road be located on the premises, and all minerals in and on said land and the license to search for and work the same, together with the right of way for convenient access thereto are reserved and excepted from this grant and conveyance," if they are mistaken in their contention that the reservation is void on account of its repugnancy to the grant, and if mistaken as to the reservation applying to only the 200 feet right of way, yet they insist that the language of the reservation and its meaning is doubtful and uncertain, and resort must be had to the rules of law governing instruments of that character. We have concluded that the exception and reservation of the mineral by the verbiage of the reservation was intended to apply to the entire grant and not to the 200-foot strip. Other quotations are presented, but, if we are not in error in what we have already said, the questions discussed sufficiently dispose of the entire case.

For reasons stated as to the repugnancy of the reservation to the land granted, the case is reversed, and judgment is here rendered for appellants.

HIGGINS, J. (dissenting in part). I am of the opinion that the evidence is insufficient to show that the reserved or excepted interest in section 57 passed from Dillingham, special master commissioner, to Olcott by the deed dated January 18, 1889. Because of the generality of the description of the lands and interests conveyed by that deed and of an exception in the granting clause of like generality, it became incumbent upon appellees to show by evidence aliunde that the mineral interest in controversy was not a part of "the land and other property subject to the first mortgage on the Waco & Northwestern division, dated June 16, 1873."

For this reason I concur in the reversal of the judgment, and think the case should be remanded for retrial. In my opinion this presents the only reversible error in the case and that all other assignments should be overruled.

The rendition is based upon the rulings of the majority: First, that the reservation or exception of the minerals did not reserve the oil and gas; second, that such reservation or exception is repugnant to the grant, and therefore void.

For the reasons indicated in Luse v. Boatman (Tex. Civ. App.) 217 S. W. 1096, and Luse v. Parmer (Tex. Civ. App.) 221 S. W. 1031, error refused in both cases, I dissent from the ruling that the exception did not embrace the oil and gas. In my opinion the ruling of the majority upon this question is in conflict with the two cases cited.

I also dissent from the ruling that the exception is repugnant to the grant and void. There is a difference between a reservation and an exception. But the terms are often used synonymously and sometimes in a deed what purports to be a reservation has the effect of an exception. In such cases the intention of the parties as evidenced by the whole instrument will be given effect, and in a proper case what purports to be a reservation will be construed as an exception without regard to the refined distinctions between the terms. Freudenberger Oil Co. v. Simmons, 75 W. Va. 337, 83 S. E. 995, Ann. Cas. 1918A, 873; 3 Washburn on Real Property (6th Ed.) §§ 2352, 2353; Devlin on Real Estate (3d Ed.) §§ 980, 980a, and cases cited.

The clause in the deed to Jane R. Smith, out of which the controversy in this case arises in terms, imports to be both a reservation and an exception. The terms were evidently used as synonymous. It is placed in that position of the deed more appropriate for a reservation than an exception.

Its manifest purpose and intention, however, was to dissever the minerals from the surface estate and except the same from the operation of the grant, so that title thereto would remain with the grantor, together with the surface rights necessary to the complete enjoyment of the mineral resources of the land. I am of the opinion that the effect of the clause is that of an exception rather than a reservation. It seems to me to be clear that the exception from the grant of the minerals in the land conveyed, "and the license to search for and work the same, together with the right of way for convenient access thereto," is but a part only of the thing granted and not all of it, and therefore not subject to the objection of repugnancy. So far as I can ascertain it has always been

considered competent to make such an exception and that it is valid. In addition to the authorities above cited see, also, Lindley on Mines (2d Ed.) §§ 9–812; Thornton on Oil and Gas (2d Ed.) §§ 302, 303.

While the validity of such an exception as against the objection of repugnancy was not raised in the two Texas cases above cited, nor in States Oil Corporation v. Ward, 236 S. W. 446, by the Commission of Appeals, yet impliedly its validity was recognized because the judgments rendered in those cases can only be sustained upon the theory that such exceptions are valid.

For the reasons thus briefly stated, I dissent from the ruling of the majority that oil and gas was not embraced in the exception contained in the Smith deed and that such exception is void for repugnancy.