## ASSOCIATED OIL CO. et al. v. HART et al.
### (No. 484.)

Court of Civil Appeals of Texas. Eastland. Oct. 12, 1928.

Rehearing Denied Nov. 23, 1928.

Baker, Botts, Parker & Garwood, of Houston (Joe F. Orr, of Fort Worth, of counsel), for appellants.

Scott & Gilbert, of Cisco, and J. Tom Higgins, of Lampasas, for appellees.

FUNDERBURK, J. The suit is one brought by appellants to establish title to certain oil, gas, and other minerals in place in a tract of land located in Eastland county; also seeking certain relief by injunction. Upon the first trial of the case judgment was rendered for appellants, which upon appeal to the Court of Civil Appeals at El Paso was reversed and judgment rendered for appellees. 261 S. W. 506. The Supreme Court, after granting a writ of error, reversed the judgment of the trial court and remanded the cause in accordance with an opinion of the Commission of Appeals. 277 S. W. 1043.

When the cause came on for hearing a second time in the trial court, all questions involved in the suit had by the former appeal been settled and determined in favor of appellants, save and except the matter of making proof of title to the oil, gas, and other minerals. The second trial was before the court without a jury, and judgment was rendered in favor of appellees. Request having been made therefor, the trial court filed conclusions of fact and law; the substance and effect of such findings in so far as material to the questions presented for our determination being that the evidence, which was entirely documentary evidence, failed to show title in appellants. This is the general effect of the court's conclusions of fact, but, stated more specifically, the court found that whatever title appellants had came by and through a deed from Dillingham, special master commissioner, to Frederick P. Olcott in pursuance of a foreclosure and order of sale in federal court; that only the property included in certain mortgages was affected by the foreclosure proceedings and only the property included in some of the mortgages was in fact sold and passed by the deed to Olcott; and that the minerals involved in this suit were not included in any of the mortgages. Wherefore, it was concluded that title did not pass to appellants.

In the deed from Dillingham, commissioner, to Olcott, dated January 18, 1889, no specific land is described, and from all the property conveyed there was excepted "the railroad lands and other property subject to the first mortgage on the Waco & Northwestern Division dated June 16th, 1873, and executed to the Farmers' Loan & Trust Company as trustee."

On the former appeal the Commission of Appeals, and by approval the Supreme Court, held that the said mortgage on the Waco & Northwestern Division not being in evidence, the deed from Dillingham, commissioner, to Olcott above referred to was not any evidence of title to the minerals sued for, since it appeared that the title to such minerals may have been a part of the property covered by the said mortgage on the Waco & Northwestern Division. It was remarked that there was no reason to believe that proof could not be made, showing the lands covered by said mortgage of the Waco & Northwestern Division, and, if so, thereby showing that that mortgage did not cover the minerals in controversy and to afford appellants the opportunity to make this proof, if possible, the

court reversed and remanded the case for a new trial.

We do not understand that the Supreme Court in said opinion undertook to specify just what was necessary to enable appellants to make sufficient proof of title. Failure to prove title on the former trial in one specified particular was urged as a reason why the Supreme Court should affirm the decision of the Court of Civil Appeals, notwithstanding it had overruled the decision of the last-named court upon a particular ground upon which that judgment was rendered. This contention was overruled, and apparently there was no occasion for the court to look into or pass upon the question of whether there was a failure to prove title in any other respect than the single one pointed out.

■ Appellants now contend that, having introduced in evidence the mortgage referred to covering the Waco & Northwestern Division, and also the deed made by Dillingham, commissioner, to Geo. E. Downs, covering the property included in said mortgage which had been or was to be sold separately from the other property of the Houston & Texas Central Railway Company and said deed, although containing no specific description of property, yet at the same time reciting that all of the lands were located in counties other than Eastland county; that such proof is sufficient to show that title to the minerals did pass by the deed under which appellants claim, namely, that of Dillingham, commissioner, to Frederick P. Olcott.

We have reached the conclusion that the documentary evidence offered by appellants to prove title to the minerals is insufficient to do so. The mortgage dated June 16, 1873, given by the Houston & Texas Central Railway Company to Farmers' Loan & Trust Company, same being the mortgage above referred to, covering what was known as the Waco & Northwestern Division, included, in addition to the railroad proper and all property pertaining to the operation of the road, "also all and singular 6000 acres of land per mile of completed road of said division; said land selected and to be selected from 10,240 acres of land per mile of completed road donated by the State of Texas to aid in the construction of said Waco & Northwestern Railroad." It was further provided in the deed:

"And when the said several 6000 acres of land for each mile of road built and to be built, hereby conveyed or intended so to be, shall be ascertained, surveyed and located, said first party will make schedules and descriptions of the said several sections and parcels of land from time to time as the same shall be surveyed and located and affix thereto the minimum price at which the same are to be sold and said company will furnish said schedules and descriptions duly certified by said railway company to said second parties * * * and whenever and so often as such schedules and descriptions of said land shall be made as aforesaid, the same shall be duly acknowledged by said first party under its corporate seal and in such manner as to entitle

them to be recorded and it shall be duly recorded by said first party in all counties in which said lands may be located, and the description of said lands when made shall be deemed and taken as a part of this indenture, with like effect as though said description had been incorporated therein."

No schedule such as called for by the provision last quoted, if ever made and filed, was offered or introduced in evidence. It is therefore apparent that the evidence of the terms of this mortgage in no way proved or tended to prove that the minerals in controversy were not included in the property covered by said mortgage, and therefore not included in the deed from Dillingham, commissioner, to Olcott, which expressly excepted from the property therein conveyed that covered by said mortgage. Such insufficiency appellants claim to have been supplied by introducing in evidence the deed of Dillingham, commissioner, to Geo. E. Downs, dated January 18, 1889 (same date as the deed to Olcott), in which, while there is not described any specific lands, it is recited that the lands covered are located in certain named counties, not including Eastland county. This contention would probably be valid if the said deed to Downs purported to cover identically the same property as was covered by the mortgage. But such is not the case. In the mortgage there is a provision for selling from time to time, free and clear of the mortgage lien, the lands covered thereby, and in the deed to Downs it clearly appears that such sales had been or may have been made, as there is expressly excepted from the lands therein mentioned "such portion of said lands as may have been heretofore and prior to May 4th, 1888, sold to other purchasers."

For aught that appears in the chain of title during the time intervening from the date of the mortgage (June 16, 1873) to the date of the deed to Downs (January 18, 1889), the minerals in controversy may have been sold, and still it be true, as recited, that all the remaining lands were located in counties other than Eastland county. Aside from the fact that the appellees, not being parties or privies to the deed to Downs, same not being in their chain of title, and therefore not bound by any recitation that the lands were located in counties other than Eastland county, the instruments do not show directly or inferentially that the property, the title to which is in controversy, was not covered by the said mortgage of the Waco & Northwestern Division. For these considerations alone we are unable to disturb the judgment of the trial court.

There are other reasons, however, that support the conclusions of the trial court that the evidence does not show title to the property in controversy in appellants. In the deed from Dillingham, commissioner, to Olcott, being the one through which it seems conceded that appellants must deraign title,

if at all, there was more than one exception from the general description of lands covered thereby. One such exception is the one we have discussed above, being the lands included in the mortgage of Waco & Northwestern Division. But still another exception, and which does not appear to have been noticed in either the opinion of the Court of Civil Appeals or that of the Commission of Appeals, but which would, nevertheless, be governed by the same principles, reads as follows:

"Saving and reserving such portions of said lands as have been heretofore and prior to May 4th, 1888, sold to other purchasers."

Even if the mortgage of the Waco & Northwestern Division certainly did not include the property in controversy, nevertheless title thereto in appellants would not be shown to have passed by the deed from Dillingham, commissioner, to Olcott, in the absence of other proof that the property in controversy was not a part of lands sold prior to May 4, 1888, and expressly excepted from the conveyance to Olcott.

The same thing is true of the deed from Frederick P. Olcott to Frederick P. Olcott, Dudley Olcott, 2d, and James N. Wallace, dated June 14, 1906, for in that deed likewise there was an exception as follows:

"Save and except only such lands, lots or interest in lands as may have heretofore been sold and conveyed by me as aforesaid."

The "aforesaid" was a preamble reading:

"Whereas, a portion of the aforementioned lands have been sold under and in pursuance of the terms of said trust indenture and conveyances thereof, covering the lands so sold have been executed and delivered by the undersigned Frederick P. Olcott," etc.

This deed, like the other, would constitute no proof of title to any particular tract of land, in the absence of proof that such particular tract of land had not been sold at the date of the deed. Ball v. Carroll, 42 Tex. Civ App. 323, 92 S. W. 1023; Waggoner v. Dodson, 96 Tex. 415, 73 S. W. 517; Corinne Co. v. Johnson, 156 U. S. 576, 15 S. Ct. 409, 39 L. Ed. 537; Reusens v. Lawson, 91 Va. 254, 21 S. E. 347; Cox v. McClure, 71 Conn. 733, 43 A. 310; Harman v. Stearns, 95 Va. 71, 27 S. E. 601; Stockton v. Morris, 39 W. Va. 442, 19 S. E. 531; Maxwell Land Grant Co. v. Dawson, 151 U. S. 604, 14 S. Ct. 458, 38 L. Ed. 279.

For the reasons discussed, the judgment of the trial court is affirmed.

## On Rehearing.

Appellant has filed a motion for rehearing herein, supported by a very able argument, that justly merits our further notice. It is earnestly insisted that, notwithstanding the defects in the proof of title pointed out in our original opinion, the fact that the land (min-

erals) in controversy was not included in the mortgage of the Waco & Northwestern Division, and therefore was not excepted in the deed from Dillingham, special master commissioner, to Olcott, is shown with requisite certainty because the land in controversy was acquired by the Houston & Texas Central Railway Company by virtue of script issued April 16, 1868, and the said Houston & Texas Central Railway Company did not acquire title to the Waco & Northwestern Division and the lands granted to said Waco & Northwestern Railroad Company until May, 1873, and since the said mortgage on the Waco & Northwestern Division was executed on June 16, 1873, and only included properties purchased by the Houston & Texas Central Railway Company in connection with the acquisition of the Waco & Northwestern Railroad, the lands covered by such mortgage could not include the land in controversy.

The proposition is sound, and if the several instruments disclosed all the facts recited, we think our holding that there was a failure to prove title in this particular respect would be erroneous. We find nothing in the record, however, to show that the script issued April 16, 1868, under which the land in controversy was located, surveyed, and patented, was issued to the Houston & Texas Central Railway Company. For aught the record discloses, the script may have been issued to the Waco & Northwestern Railroad Company.

While the record, by reference to the act providing for the merger of the Waco & Northwestern Railroad Company with the Houston & Texas Central Railway Company, shows the date to have been May 24, 1873, there is nothing to show the date when the Waco & Northwestern Railroad Company acquired the script or other evidence of right to the 10,240 acres of land per mile of completed road, 6,000 acres per mile of which was covered by said mortgage. For all the record discloses, the issuance of this script may have antedated April 16, 1868. For these reasons we are compelled to overrule appellant's contention on this point.

It is also contended that appellees having specially pleaded their title, which failed of proof, as determined on a former appeal of the case, they are not in position to claim the benefit of any uncertainty as to whether the land (mineral interests) in controversy was or was not shown to be included in the documentary proof of appellants' title. In support of this contention, two propositions are urged: One, that under such circumstances the prior possession of appellant is sufficient to support judgment in its favor; and, the other, that in such case proof of an outstanding title is not available as a defense. The answer is that the possession that under such circumstances may be sufficient to support a recovery means, we think, an actual possession, which the record does

not show. That kind of possession would not be shown by title papers only.

██ The other point is not applicable. True, appellees could not defend against prima facie proof of ownership by showing an outstanding title other than as specially pleaded. But this principle in no manner relieves the plaintiff of making prima facie proof of his own title. The very authorities quoted from by appellant in its brief show this to be the case. Appellant, in its argument, underscores the statement:

"It is a well settled principle of law that in such cases as this the only burden placed upon the plaintiffs is to show such title as will enable them to recover, if not defeated by the special defenses pleaded."

But we have held that appellant here failed to prove any title whatever, which answers completely this argument.

██ We are asked to reverse the case for a new trial, even though we determine we were not in error as to the matters discussed in our original opinion. We are impressed with the reasons urged, but we know of no precedent that would warrant us in fully approving the action of the trial court, but at the same time reversing and remanding the case. We doubt if such a course is within the legitimate discretion of this court.

The motion for rehearing is accordingly overruled.